■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHNNY RODRIGUEZ, Also Known as GORDO, Appellant.—Judgment, Supreme Court, New York County, rendered on February 27, 1980, convicting defendant, after trial by jury, of three counts of criminal sale of a controlled substance in the second degree and one count of criminal possession of a controlled substance in the fifth degree, and resentencing him to an indeterminate term of three years to life, is affirmed. The sole issue dividing this court is whether the hearing court abused its discretion in denying defendant's request for a second competency examination pursuant to CPL article 730. On the record before us, we cannot discern the existence of any abuse. On July 27, 1978, the People moved to convert the findings of two psychiatrists who determined that defendant was unfit to proceed to trial. The court, after hearing the testimony of these two medical experts, concurred in the determination that defendant "as a result of a mental disease * * * lacks the capacity to understand the proceedings against him, or to assist in his own defense." The court then ordered defendant committed to the Commissioner of Mental Hygiene for care for a period not to exceed one year. On August 10, 1978, defendant was transferred to Mid-Hudson Psychiatric Center where, seven days after his arrival, staff psychiatrists found that defendant was "a malingerer and fit to proceed." The findings of these experts are contrary to the prior findings of their colleagues. In any event the report filed by the psychiatrists from Mid-Hudson is enlightening and instructive. This report without equivocation declares that "on the surface [defendant's] attitude seemed cooperative and friendly, while in actual fact he was trying to mislead the examiner." This analysis goes on to state that "it was very evident that he was lying." The examiners, thereafter, turned their attention to defendant's understanding of the pending criminal matter. The experts concluded: "Questioned on legal matters, patient stated that he did not understand the meaning of 'plea' and not even of the word 'guilty.' In this connection he said his lawyer had recommended that he should go to a hospital for two to three months 'to make sure that I wouldn't hurt anybody' and that in * * * Riker's Island [Prison Mental Health Services] they had told him about this place. Apparently what this amounts to is that patient arranged with his lawyer to go for an insanity defense and that he had been briefed by other inmates in Riker's Island about Mid-Hudson. Comparison of his present answers with his previous 730 examination in a Manhattan forensic clinic, showed clearly he was lying. At that time he answered to the question about a plea in the one case with 'I said Not Guilty', in the other case with 'The lawyer wants me to plead guilty (he says) that if I got to trial I will blow the trial. I don't know if it makes sense. I know I ain't guilty. It's up to them what they want to do'." Additionally, defendant's professed noncomprehension of legal matters is tempered by a realization that this experience did not signal his introduction

into the criminal justice system. The clear import of defendant's latest examination is that "he was intentionally trying to give the impression of being unfit to proceed." For whatever reason, defendant was able to perpetrate this charade for a period of time and almost brought it to a successful conclusion. However, when defendant was thrust into the studied environs of Mid-Hudson, his stratagem was uncovered and exposed for what it was. When defendant was returned to court, defense counsel made an application for a second competency examination. The hearing court inquired whether counsel could particularize his claim that "defendant was out of touch with reality." Indeed, counsel could not. The court denied the application and in doing so, noted that during the course of several calendar calls defendant appeared to understand the proceedings. An additional factor considered by the court in denying this application was defendant's personal rejection of a plea offer "for a good reason as far as the defendant was concerned." Defendant's later participation at trial substantiated the determination that he was fit to proceed. The cross-examination of defendant at times was intense and he was able to recall with clarity his version of the details of the drug transactions which took place over one and one-half years prior to his testimony. From all of these facts it is evident that a second competency examination was not warranted and therefore the hearing court did not abuse its discretion in denying this request. Concur—Ross, Markewich, Lupiano and Lynch, JJ.

Murphy P. J., dissents in a memorandum as follows: Defendant Rodriguez was indicted for selling substantial quantities of heroin to an undercover police officer. At the defendant's request, the court directed that the defendant receive a psychiatric examination. Two psychiatrists examined the defendant and found that he was not fit to proceed to trial. Pursuant to CPL 730.30 (subd 3), the prosecution then moved, as of right, for a hearing to controvert the psychiatric reports. That hearing was held on July 27, 1978 before Justice Marks. One phychiatrist, John Simon, found, *inter alia,* that the defendant (i) had an IQ of 54, (ii) was retarded, (iii) was unable to conceptualize and focus on a problem, (iv) lacked concern and motivation to be of assistance to his attorney, and (v) was too "stupid" to be "faking" his condition. The other psychiatrist who testified was Murray Gorden. He found, *inter alia,* that the defendant (i) would have difficulty understanding the adversarial proceeding, (ii) had difficulties thinking and organizing, (iii) exhibited "paranoid thinking", and (iv) would not be able to understand various defenses available to him. Based upon the testimony of the psychiatrists, Justice Marks found that the defendant was not fit to proceed. He directed that the defendant be committed to the Commissioner of Mental Hygiene for care and treatment at an appropriate institution for a period not to exceed a year. The defendant was transferred to Mid-Hudson Psychiatric Center on August 10, 1978. In his report dated August 18, 1978. Dr. Vandenbergh found, *inter alia,* that the defendant (i) did not suffer any impairment of his judgment or reason, (ii) had normal insight, (iii) was a malingerer and inverterate liar, (iv) was illiterate but streetwise, and (v) was fit to proceed. The defendant was returned to court on September 8, 1978. On September 18, 1978, defendant appeared before Justice Dontzin so that a trial date could be set. Defense counsel moved for another hearing under CPL article 730. Counsel stressed that the defendant did not understand him.

Moreover, counsel averred that the defendant could not aid in his own defense. However, when pressed by Justice Dontzin, the defense counsel could not point to a specific instance to show that defendant was "out of touch with reality". Justice Dontzin could not find any reason for holding another article 730 hearing. He noted that he had observed the defendant at two or three calendar calls over a several day period. The court found that, while the defendant was not the "brightest of people", he did understand what was happening. The overriding question presented is whether defendant should have been accorded a second article 730 hearing upon his return from Mid-Hudson to the court. CPL 730.60 (subd 2) merely provides that, when a defendant is returned from an institution upon a finding that he is not incapacitated, the criminal action against him must proceed. Relying upon *People v Acevedo* (84 Misc 2d 563), defendant contends that he is entitled, as a matter of right, to a second hearing under CPL 730.30 (subd 3). The prosecution maintains that the CPL does not give defendant a statutory right either to challenge Mid-Hudson's determination or to demand a second article 730 hearing. As both sides candidly concede, the CPL does not specifically cover the present dispute. However, on page 19 of its brief, the prosecution does state that a defendant in this position is not without remedy. The prosecution alleges that "a second competency examination by court-appointed psychiatrists is possible under the statute." The prosecution, inexplicably, does not particularize that section in the CPL that would permit such relief nor does it otherwise elaborate on that statement. Nonetheless, I would agree with the prosecution that the court may order a re-examination by psychiatrists; but I would go further and find that a court may also order a second competency proceeding if it is necessary. Article 730 must be read as giving to the court a continuing power to determine whether an individual is incapacitated. If a court has any doubt as to the capacity of an individual, it should have the discretionary power to take such action as is appropriate under the circumstances. *(People v Kurtz,* 71 Misc 2d 493.) On July 27, 1978, the defendant was found unfit to proceed; three weeks later he was found fit to proceed. Thus, a serious discrepancy presented itself within a short period of time as to the defendant's actual capacity. Upon the defendant's return from Mid-Hudson, it was paramount that this matter be settled. Faced with the differing views espoused by the medical experts, it was an abuse of discretion for the court not to order a second competency hearing or, at the very least, to order a further psychiatric examination of the defendant. It was improper for the court to gauge defendant's mental capacity from the brief encounters at calendar calls. Likewise, a determination as to defendant's mental status should not have depended on the ability of his counsel to articulate specific defects in his client's mental processes. Of course, the defendant's performance at trial is not necessarily a true indicator that he understood the proceedings against him or effectively assisted in his own defense. Accordingly, the judgment of the Supreme Court, New York County, rendered February 27, 1980, convicting defendant of three counts of criminal sale of a controlled substance in the second degree and sentencing him accordingly, should be held in abeyance. This matter should be remanded for a hearing as to whether defendant was incapacitated on the date of trial and for such other action as is appropriate. For purposes of resolving this

particular appeal, it is unnecessary to reach the broader legal questions of whether defendant may (i) demand a second competency hearing as of right *(People v Acevedo, supra)* or (ii) challenge the Mid-Hudson determination directly in court rather than indirectly under a second article 730 hearing.