Simons, J.
(dissenting). The majority find nothing in CPL 730.30 (2) or 730.60 (2) which “authorizes the hearing court to refuse” defendant the right to submit partisan psychiatric testimony to controvert the diagnosis, made by doctors of the State institution in which he had been held for observation, that he was no longer an incapacitated person. They hold, therefore, that the court’s refusal to hear such evidence constituted reversibly error. I can find nothing in the statute or which can be implied from it which grants defendant an absolute right to submit such evidence and, therefore, I assume that the Legislature intended to commit the matter to the discretion of the hearing court. Inasmuch as the record establishes convincingly that the court properly exercised its discretion, I dissent and would affirm the judgment.
Defendant was charged with three counts of second degree murder arising out of the much publicized and apparently racially motivated killing of three black men in the City of Buffalo in September 1980. He was arraigned on May 11, 1981 and at that time the court ordered a psychiatric examination pursuant to CPL art 730. Two psychiatrists, Drs. Molnar and Wadsworth, examined him and found him fit to proceed. The case was reached for trial the following fall. On October 20,1981, the day before jury selection was to start, counsel announced that defendant had decided not to invoke an insanity defense. He advised the court that he and defendant’s court-appointed psychiatrist had fully explained the options to defendant and that in counsel’s opinion defendant was competent to make that decision. Jury selection commenced the next day. During voir dire defendant, against the wishes of his attorney, moved to waive a jury and proceed by bench trial. Counsel then changed his position on his client’s competency and contended that he was not fit to proceed, apparently believing that defendant was competent to proceed before a jury but not competent to proceed before a judge *428 without a jury. Counsel’s ambivalence became even more apparent, the court noted, when he subsequently agreed to withdraw his claim of incompetency if the court would deny defendant’s motion to waive a jury. At this point the court ordered a further psychiatric examination solely to determine if defendant was competent to waive a jury. After reexamination, Dr. Molnar continued to believe defendant was fit to proceed but Dr. Wads-worth changed his earlier diagnosis and held that he was not. The court then ordered a full psychiatric reexamination pursuant to CPL 730.30 (1). Three additional doctors were appointed and examined defendant. They too disagreed on his fitness to proceed. On this state of the record, finding the evidence “exceedingly close”, the court ruled that the People had not met their burden of proving competence by a preponderance of the evidence and ordered defendant committed to Mid-Hudson Psychiatric Center for observation (see, CPL 730.40 [1]).
defendant was returned to court two months later, certified by the superintendent of Mid-Hudson as competent to stand trial. After speaking with defendant, however, his counsel advised the court that defendant was no different than he had been earlier and he requested further psychiatric examinations and a hearing. Defendant adamantly opposed his counsel’s request and urged immediate trial. The court settled the dispute by ordering a hearing on the report certifying defendant. One of the three psychiatrists who had treated defendant at Mid-Hudson, Dr. Chellappa, was called to testify. It is this hearing and the court’s rulings during it which present the issue which divides the court on this appeal.
Before and during the hearing, defense counsel requested that the four psychiatrists who had previously testified that defendant was not fit to proceed reexamine defendant and testify in opposition to Dr. Chellappa. Counsel offered no reason why reexamination was required except for conclusory assertions that defendant failed to cooperate with him and the speculation that further examinations might develop evidence of incapacity. The court reserved decision on the request while it heard the testimony of Dr. Chellappa but it did not foreclose defendant or his counsel from cross-examining the doctor nor did it foreclose them from offering additional evidence.[1] At the conclusion of the *429 hearing, the court decided that it had sufficient evidence before it to determine the matter and that no further psychiatric evidence was necessary. It therefore denied counsel’s motion and ruled that defendant was fit to proceed to trial.
Specifically, the court had before it the expert opinions of 11 different doctors who had made psychiatric evaluations of defendant (Drs. Molnar and Wadsworth had evaluated him twice). All of them believed defendant was competent to understand the proceedings; they disagreed on whether he was able to assist in his defense. Those who believed he could not based their opinions in part upon a diagnosis that he was suffering from a mental disease, paranoia, and the fact that he failed to cooperate witjh his lawyers or with the examiners. That conduct was not necessarily irrational, however; defendant insisted that he was competent to proceed and he insisted, contrary to his lawyer’s adyice and for reasons he expressed with considerable logic, that he stood a better chance of acquittal before a judge than before a jury. Indeed, believing he was competent, defendant even had instituted a pro se habeas corpus proceeding seeking release from Mid-Hudson Psychiatric Center and return for trial and he had presented psychiatric evidence in that proceeding which supported his claim. Also to the point, the court noted that when defendant had appeared before it in several proceedings during the preceding year he was always alert and fully oriented and that he had participated in the proceedings, appeared to understand them and had suggested questions to his lawyers concerning matters they could not otherwise know of.* [2] Insofar as defen *430 dant may have been disadvantaged at the second hearing by any claimed lack of psychiatric assistance, the court noted that it had previously appointed a psychiatrist to aid defendant at State expense, that the psychiatrist had appeared with defendant and his lawyer during earlier examinations, had advised them at the hearing thereafter and that he was still available to assist him. Although counsel contends otherwise, there is nothing before us to indicate that that psychiatrist was unavailable or that his assistance was inadequate and the majority do not rest their reversal on defendant’s lack of psychiatric assistance in,conducting the hearing or cross-examining Dr. Chellappa. Indeed, counsel has not identified a single instance during the hearing or the trial in which arguably defendant was hampered or prejudiced by the court’s decision to proceed.
The narrow issue dividing the court on this appeal is whether the court erred in denying defendant’s application to retain psychiatrists, either at State expense or at his own expense, to examine him and testify in opposition to the doctor from Mid-Hudson Psychiatric Center after defendant was returned from that institution. The majority find that he had a statutory right to submit such evidence.* *[3]
CPL 730.30 sets forth a comprehensive scheme for determining whether a defendant is an incapacitated person within the definition of the statute (CPL 730.10 [1]). Subdivision 1 provides for an order of examination when the court determines that defendant may be an incapacitated person, subdivisions 2,3 and 4 provide for various procedures after examinations have been completed depending upon the results of those examinations and the court’s view on the issue of incapacity. In this case, the court had determined that examinations were required and ordered *431 them pursuant to subdivision 1 and it had already held hearings at which the examiners testified and the court evaluated their findings. The propriety of those hearings is not before us. The hearing in question is the hearing held after defendant had been returned to court from Mid-Hudson Psychiatric Center, certified as fit to stand trial by the superintendent.
CPL 730.60 (2) provides that when a defendant has been returned to court after a period of observation, certified as fit to proceed, his procedural rights shall be governed by CPL 730.30 (2). That section provides: “2. When the examination reports submitted to the court show that each psychiatric examiner is of the opinion that the defendant is not an incapacitated person, the court may, on its own motion, conduct a hearing to determine the issue of capacity, and it must conduct a hearing upon motion therefor by the defendant or by the district attorney. If no motion for a hearing is made, the criminal action against the defendant must proceed. If, following a hearing, the court is satisfied that the defendant is not an incapacitated person, the criminal action against him must proceed; if the court is not so satisfied, it must issue a further order of examination directing that the defendant be examined by different psychiatric examiners designated by the director.” The relevant provision is the first sentence which authorized the court to hold the hearing. It gives no guidance on the nature of the hearing but manifestly it was designed to aid the court in evaluating the report of the institution’s doctor. If the court is not satisfied with the doctor’s report and testimony after the hearing, the statute authorizes it to order another round of examinations, but nothing in the subdivisions grant defendant the right to submit additional psychiatric evidence in opposition to the doctor’s diagnosis. The court was satisfied with the evidence after this hearing and there was no need for it to hear additional psychiatric evidence or to order a fourth round of examinations. Accordingly, it ordered the criminal action to proceed. In holding it was bound to hear additional psychiatric evidence, the majority rely upon the last sentence of subdivision 2 but that refers to proceedings “following a hearing.” But that language does not govern the procedure during the hearing after defendant’s return or grant him the right to submit additional psychiatric evidence at it. The purpose of the hearing was to test the certification. It was only a part of the proceedings conducted pursuant to CPL 730.30, and the court’s decision after it was concluded was based not only on the evidence presented at that hearing but also upon all the evidence in the record of the criminal action, the prior *432 article 730 proceedings and the report of defendant’s doctor in the habeas corpus proceeding.
Any doubt about this interpretation was removed by the reasons which prompted the 1981 amendment to section 730.60 (2). Originally the section provided that when a defendant had been found incapacitated and confined to a State institution and the superintendent of the institution thereafter certified that he was no longer incapacitated, the defendant was to be returned to court and “the criminal action against him must proceed.” Some lawyers and judges apparently found this language ambiguous and construed it to mean that the court had no authority to reject the superintendent’s certification. Accordingly, the statute was amended by deleting the quoted section and providing that when a defendant was returned from the hospital and certified as fit to proceed, the court “must thereupon proceed in accordance with the provisions of subdivision two of section 730.30” (L 1981, ch 791). The sponsor’s memorandum explained: “Criminal Procedure Law: § 730.60. The purpose of this bill is to ensure that a Superintendent of a Mental Hygiene Facility may not overrule a court’s determination on the issue of capacity. There currently is an ambiguity on the question of whether a court is bound to accept the determination of the department on the crucial question of a defendant’s mental fitness to proceed in a criminal case. People v. Rodriques [sic], Supreme Court, New York County (1980), highlights this ambiguity. Although a defendant is currently entitled to a capacity hearing after an initial psychiatric examination current language in § 730.60(2) does not explicitly state that he is so entitled after a temporary order of observation or an order to commitment or retention. This bill ensures that the court, the district attorney and the defendant retain the right to contest the determination of the department. Passage of this bill will prevent the mental hygiene department from making a determination of a defendant’s capacity without the court system’s assent. Since the Court has made an initial determination on a defendant’s capacity, it should have the opportunity to conduct a new hearing before accepting the department’s findings” (1981 NY Legis Ann, at 423-424).
Thus the purpose of the amendment was not to grant a defendant a wide ranging adversarial hearing at which he could introduce partisan opinion evidence in opposition to the superintendent’s report. Indeed, that interpretation is contrary to the statute’s requirement that neutral psychiatric examiners be used (see, CPL 730.10 [2], [5], [7]). It was intended to clarify the *433 statutory authority permitting the court to require the superintendent or the institution’s doctors to testify in support of the superintendent’s diagnoses, to reevaluate its ruling on the basis of that evidence and to order a further examination thereafter if it determined that one was required. In short, the amendment sought to insure that the court, not the superintendent of the hospital to which defendant was confined, would determine whether defendant was an incapacitated person (see, Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, Book 7B, CPL 730.60, p 304).
This interpretation is confirmed further by a report made by a committee of the Association of the Bar of New York City (see, Mental Illness, Due Process and the Criminal Defendant, Second Report and Additional Recommendations of the Assn of Bar of New York City [1968]). The bill jacket for the original statute indicates that much of article 730 was patterned after recommendations in the report (see, Legis Bill Jacket, L 1970, ch 996). The report notes the concern of the committee that the court should feel free to reject the superintendent’s report and conduct further examinations if it felt them warranted (id., at 85). The 1981 amendment became necessary after the meaning of the statute had been questioned in a specific case in which the prosecutor had contended that CPL 730.60 (2) did not permit the defendant to challenge the superintendent’s certification (see, People v Rodriguez, 79 AD2d 576, dissent of Murphy, P. J., at p 578; see also, Legis Bill Jacket, L 1981, ch 791, Memorandum of Arnold D. Hechtman to John G. McGoldrick dated June 29, 1981). Nothing in the amendment or its history, however, suggests that the Legislature intended by it to expand defendant’s rights under the original statute.
It is also worth noting that this analysis of the statute is consistent with the historical development of capacity hearings. At common law, an incompetent accused could not be brought to trial (Youtsey v United States, 97 F 937,940-946; see also, Bishop v United States, 350 US 961). The law distinguished between defendants who lacked the mens rea to commit the crime because they were insane at the time of the offense and those lacking the capacity to defend because incapacitated at the time of trial. The rule, then as now, held that although a defendant may well have been insane at the .time of the crime and also at the time of trial, he could be prosecuted if he understood the nature of the proceedings and was able to assist in his own defense. If he was incapacitated at the time of trial, the proceedings could not continue (see, Freeman v People, 4 Denio 9, 27).
*434 The court possessed broad discretion to determine whether to inquire into defendants’ capacity (see, People v Smith, 3 NY2d 184, 186; People v Nickerson, 1 NY2d 815) and whether to impanel a jury or to decide the issue itself (Weihofen, Mental Disorder as a Criminal Defense, at 429, 445-447). If it was satisfied from its own observations that there was no basis to question defendant’s capacity, he was not entitled to a hearing (People v McElvaine, 125 NY 596; see also, People v Esposito, 287 NY 389). On appeal, the Trial Judge’s competency ruling was sustained unless found to be clearly arbitrary (see, Freeman v People, supra; Comment, The Effect of the New York Criminal Procedure Law upon the Treatment of the Mentally Incompetent Defendant, 20 Buffalo L Rev 646, 647). The former Code of Criminal Procedure similarly granted the trial court broad discretion in determining capacity (Code Crim Pro §§ 658, 662-a, 662-c).
Our present practice is derived from these rules. Subject to specific statutory limitations, the court retains broad discretion to decide capacity issues based upon its own observations and, if examination is required, upon its evaluation of evidence of neutral psychiatric examiners (see, People v Rodriguez, 79 AD2d 576, affd 56 NY2d 557, supra; CPL 730.10 [5], [7]; cf. former Code Crim Pro § 659; 18 USC § 4244). The defendant’s incapacity must be the result of mental disease or defect (CPL 730.10 [1]) but the determination of his capacity is a judicial determination, not a medical one (see, Comment, Incompetency to Stand Trial, 81 Harv L Rev 454, 470; Comment, 20 Buffalo L Rev 646, 651-652; Cooper, Fitness to Proceed, A Brief Look at Some Aspects of the Medico-Legal Problem Under the New York Criminal Procedure Law, 52 Neb L Rev 44, 53, 67; Pizzi, Competency to Stand Trial in Federal Courts: Conceptual and Constitutional Problems, 45 U of Chi L Rev 21, 54-55). Thus, the statute restricts the reports of the examiners to information necessary for the court’s decision (see, CPL 730.10 [8]; see also, Mental Illness, Due Process and the Criminal Defendant, Second Report and Additional Recommendations of Assn of Bar of New York City, at 85 [1968]) and, significantly, under the various alternatives provided in CPL 730.30 the opinions of the psychiatrists are not binding on the court.
The dispositive issue always is defendant’s ability to function at the trial and although psychiatric evidence is required once the defendant’s capacity is questioned, resolution of the question is not necessarily aided by multiple examinations or additional psychiatric testimony because the psychiatrists’ orientation is *435 therapy; they have little familiarity with criminal prosecutions. The court is familiar with the procedures and dynamics of a criminal prosecution, however, and it can best assess the defendant’s mental capacity against the specific demands the trial may make upon him. In the final analysis, it must decide whether defendant can understand the proceedings and, with a “modicum of intelligence”, assist counsel (People v Francabandera, 33 NY2d 429, 435-436).
In sum, absent an explicit controlling statutory direction, the determination to order further examinations or to receive additional psychiatric evidence is one that rests now, as it always has, in the sound discretion of the hearing court. Its decision on the matter, absent clear error should be upheld. Under similar circumstances, this court (see, People v Rodriguez, 79 AD2d 576, affd 56 NY2d 557, supra; see also, People v Esposito, 287 NY 389, supra) and several Federal courts, interpreting a similar statute (18 USC § 4244), have held that a defendant does not have a right to seek repeated mental examinations and that the denial of his request for such examinations or to offer expert psychiatric testimony on his mental condition at a hearing, unsupported by legitimate reasons for doing so, does not constitute an abuse of discretion (Ruud v United States, 347 F2d 321, cert denied 382 US 1014; United States v Cook, 418 F2d 321; United States v Maret, 433 F2d 1064; cert denied 402 US 989; United States v Valtierra, 467 F2d 125; see, Pizzi, Competency to Stand Trial in Federal Courts: Conceptual and Constitutional Problems, 45 U of Chi L Rev 21, 54-57). That discretionary power controls the result in this case and requires an affirmance of defendant’s conviction.
Chief Judge Wachtler and Judges Kaye and Alexander concur with Judge Meyer; Judge Simons dissents and votes to affirm in a separate opinion in which Judge Jasen concurs; Judge Titone taking no part.
Order reversed, etc.

. Specifically, defense counsel were free to cross-examine the institution doctors and to submit evidence on behalf of defendant that he was not able to assist in his defense. The application to offer additional psychiatric evidence initially sought reexamination by the four psychiatrists who had previously testified defendant was incapacitated, then apparently sought a further statutory examination, at least the court understood it as such, and finally was *429 submitted as an application to present additional psychiatric testimony to rebut the superintendent’s certification. The court reserved judgment on the application to submit additional psychiatric evidence until the conclusion of the hearing. It then denied the motion, holding that such evidence would be “cumulative and unnecessary.”

. Parenthetically, I would add that I do not agree with the majority that the court may ignore defendant’s wish for a prompt trial when his counsel urges a finding of incapacity. For every reason counsel can advance for delay, the defendant can advance an equally cogent reason for a prompt trial to exonerate himself before the evidence grows stale or disappears and before he is consigned to a period of incarceration and treatment in a hospital for the criminally insane (see, Comment, Incompetency to Stand Trial, 81 Harv L Rev 454, 455-456; Cooper, Fitness to Proceed: A Brief Look at Some Aspects of the Medico-Legal Problem Under the New York Criminal Procedure Law, 52 Neb L Rev 44,64). As has been aptly stated, “[t]he gravest injustice is inflicted upon a person by criminal law commitment upon a finding of unfitness to proceed when it later turns out that he had not committed any criminal act” (see, Bacon, Incompetency to Stand Trial: Commitment to an Inclusive Test, 42 S Cal L Rev 444, 448). In the absence of agreement on the necessity of a hearing between defendant and his counsel, the court wisely ordered one to review the doctors’ certification of competency. But defendant’s wishes and his well-stated *430 and rational reasons for proceeding contrary to his counsel’s advice were entitled to the consideration the hearing court gave them when it decided the issue after the hearing. Pate v Robinson (383 US 375, 384) does not hold otherwise.

. Defendant mentions this statutory right only briefly in his submissions and without specification of the basis for it. His principal contentions concerning the hearing are that reversal is required (1) because Dr. Chellappa was unqualified and his testimony unworthy of belief and (2) because he was denied due process. The first issue is beyond our power of review. Because the majority have decided the appeal on statutory grounds, it is not necessary to address the constitutional issue. We have previously held, however, that the procedures set forth in title 12 of the former Code of Criminal Procedure, generally similar to the procedure contained in article 730, satisfied due process requirements (see, People v Hudson, 19 NY2d 137, cert denied 398 US 944; see generally, Validity and Construction of Statutes Providing for Psychiatric Examination of Accused to Determine Mental Condition, Ann., 32 ALR2d 434).