## (December 28, 1973)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. ERVUN L. ARMLIN, Appellant.— Appeal from a judgment of the County Court of Fulton County, rendered March 5, 1973, convicting defendant, on his plea of guilty, of rape in the first degree. Defendant, indicted for two counts of burglary in the first degree and for rape in the first, second and third degrees, pleaded guilty, during trial and while represented by an attorney, to rape in the first degree in full satisfaction of the indictment. Proof had been submitted that defendant entered a Johnstown, New York, home during the early morning of August 10, 1972 and, brandishing a knife and threatening its use, engaged in sexual intercourse with a 12-year-old child residing therein. Prior to trial and following two days of *Huntley* hearing testimony, the court concluded that defendant knowingly and intelligently waived his rights and that it was proven beyond a reasonable doubt that the challenged admissions and signed statements were made voluntarily and were therefore admissible. An order filed December 29, 1972 directed that the Superintendent of the Utica State Hospital cause an examination of defendant's mental condition to be made and that he designate two qualified psychiatrists from said hospital staff for such purpose. An order filed January 12, 1973 directed that defendant be committed to said hospital for treatment, observation, examination and report as to his physical and mental condition. Although it appears that these decrees were never complied with, no explanation being given, he was taken to the Fulton County Mental Health Clinic and there examined by one psychiatrist, Dr. Rockmore (see CPL 730.10, 730.20), who found that defendant was fully competent to understand the nature of his activities and that clinically he was competent and not suffering from any mental disorder. Under normal circumstances, defendant, by not objecting and by not bringing the noncompliance with the orders 'to the court's attention, did not preserve the issue for appeal (*People* v. *Hicks,* 287 N. Y. 165, 174; *People* v. *Weis,* 32 A D 2d 856, cert. den. 397 U. S. 1047; see CPL 470.05, subd. 2), and, by pleading guilty, waived his right to object to the failure to conform to the orders, a nonjurisdictional matter (cf. *People* v. *Lynn,* 28 N Y 2d 196, 201–202; *People* v. *Schiskey,* 39 A D 2d 608), providing the plea was intelligent and voluntary (see *Boykin* v. *Alabama,* 395 U. S. 238, 242). In determining at this juncture whether defendant voluntarily, knowingly and intelligently waived his constitutional rights prior to executing the written statements, the appropriate test is a consideration of the totality of the circumstances (*People* v. *Chaffee,* 42 A D 2d 172). The Sheriff, who was present at the interrogation, testified that

defendant had some sort of a mental problem and that in his opinion defendant needed some psychiatric help. There was no proof of expert qualifications on the part of said official nor of any irrational conduct by defendant at any time. He was not subjected to prolonged interrogation and there is no indication or claim that force or deception was employed. While an argument is made that one of the officers was a friend of the accused, there is no indication that this relationship influenced or coerced defendant's decision to confess. No promises or threats were made. No evidence was introduced that defendant was incapable of functioning normally or of understanding and intelligently waiving his rights. Under all the circumstances, the People sustained their burden of proving that defendant knowingly and intelligently waived his rights and that his confessions were voluntarily made. It is contended that the trial court erroneously accepted the guilty plea without first holding a hearing to determine whether defendant was mentally competent. There is no statute requiring such a hearing in every instance where it is claimed that a defendant has a mental problem or a history of psychiatric treatment and the fact that a defendant had a history of mental disturbance does not in itself prove that he was insane at the time of plea or sentencing (*People* v. *Boundy,* 10 N Y 2d 518, 521). There is no intimation that defendant was ever institutionalized or declared insane or even mentally ill at any time prior to his sentencing. Indeed, the examining psychiatrist's report negated insanity. The trial court, after questioning defendant as to the basis for his plea, stated it was satisfied from defendant's demeanor and the clarity and definiteness of his responses that he was "voluntarily, willingly and intelligently, with full awareness of [his] rights and consequences * * * pleading guilty." The record does not present a basis for holding that error was committed in failing to conduct such a hearing. Judgment affirmed. Staley, Jr., J. P., Cooke and Sweeney, JJ., concur; Kane, J., dissents and votes to reverse in the following memorandum.

Kane, J. (dissenting). A defendant does not have an absolute right to a psychiatric examination (CPL 730.30, subd. 1) nor did such a right exist under the predecessor provision of the Code of Criminal Procedure (*United States ex rel. Donaldson* v. *Henderson,* 346 F. Supp. 749). It is within the trial court's discretion whether or not to order an examination of a defendant (*People* v. *Falu,* 37 A D 2d 1025). Once, however, the provisions of CPL article 730 are invoked by the trial court at its own instance or by the grant of a motion of a defendant, it is incumbent upon the court to carefully adhere to the statutory provisions. CPL 730.20 (subd. 1) requires that the appropriate director to whom a criminal court issues an order of examination "must designate *two* qualified psychiatrists, of whom he may be one, to examine the defendant to determine if he is an incapacitated person, except that if the director is of the opinion that the defendant may be mentally defective, he may designate one qualified psychiatrist and one certified psychologist to examine the defendant" (emphasis added). This provision is very clear, as is the entirety of article 730, and nowhere therein is there an exception to the requirement that there be two examiners. Having in this case formed an opinion that defendant may be an incapacitated person, the court ordered that he be taken to Utica State Hospital to be examined by two qualified psychiatrists designated by the superintendent of the facility. In fact, there was only one examination which took place at the Fulton County Mental Health Clinic by a psychiatrist. To proceed with the criminal prosecution on this single psychiatric examination was a violation of CPL 730.20 (subd. 1) as well as the court's own order. (A defendant who was directed to be examined by two psychiatrists but who was in fact subjected to a single examination refused to answer questions of the

examiner. He was adjudged in contempt of court but, in an article 78 proceeding, was successful in vacating the contempt order and was awarded a judgment prohibiting and restraining the Erie County Court and the District Attorney from compelling him to answer questions propounded to him by a single psychiatrist [*Matter of Lee* v. *County Ct. of Erie County,* 32 A D 2d 885, 33 A D 2d 1093, mod. 27 N Y 2d 432].) In addition to the violation of the statute, although not controlling or decisive, are the facts of this case which were before the court at the time a trial date was fixed. Defendant told the psychiatrist that when he learned that his brother was killed in Viet Nam, he joined the military service to retaliate his death. While in Viet Nam, he earned four separate Purple Hearts and in his service medical records were medical opinions that he was a chronic undifferentiated schizophrenic and suffered an acute psychotic reaction with delusions of grandeur. After discharge from the Army, apparently just a short time before he was charged with the crimes, he was being treated at the Veterans' Hospital as a psychiatric outpatient. One of the police officers who made the arrest and who was a longtime acquaintance of defendant and his parents, testified at the *Huntley* hearing that defendant needed psychiatric help and that it was his impression that he was long overdue to be institutionalized. These facts came to the attention of the court after it had reached the conclusion that defendant may be incapacitated. To permit this judgment of conviction to stand, we are directly disregarding a mandate of the legislative branch and indirectly passing upon the competency of the defendant. A strong argument is made that, since defendant made no objection at the trial, took no other affirmative action regarding the noncompliance with the court's order and ultimately pleaded guilty, he waived his right to raise the issue on appeal. It is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently waive his right to have a court determine his capacity to stand trial (*People* v. *Hudson,* 19 N Y 2d 137; *People* v. *Clancy,* 39 A D 2d 538, 539; *People* v. *Mullooly,* 37 A D 2d 6, 9; cf. cases not involving alleged incompetence, *People* v. *Rogers,* 15 N Y 2d 690; *People* v. *Nicholson,* 11 N Y 2d 1067; *People* v. *Schiskey,* 39 A D 2d 608). Failure to afford a defendant the statutory protection available in this regard constituted a violation of his constitutional right to a fair trial (*Pate* v. *Robinson,* 383 U. S. 375, 385). Accordingly, determination of this appeal should be withheld, and the matter remanded to the County Court of Fulton County for a hearing in accordance with *People* v. *Hudson* (*supra*).