G-abrielli, J.
The novel question posed in this case is whether defendant, suffering from retrograde amnesia so as to be unable to recall the. events surrounding the crimes with which he is charged, is an “ incapacitated person ” within the meaning of GPL 730.10 (subd. 1) so as to be unfit to stand trial as the result. of a mental defect which, he argues, deprives him of the capacity to assist in his own defense; and also whether the ruling that he is fit to stand trial which induced a guilty plea to a reduced charge, renders that plea involuntary thereby denying -him due process and equal protection. He further argues that the indictment should be dismissed.
Defendant was indicted for attempted murder, reckless endangerment and possession of a dangerous weapon based on events occurring on June 15, 1971 in North Massapequa, New York. Evidence possessed by the District Attorney, consisting of civilian and police eyewitness descriptions of the event together - with photographs, is to the effect that defendant, who appeared intoxicated, went to his car, withdrew a shotgun, and commenced firing at bystanders; he then returned to his car and withdrew a rifle which he fired at police as they arrived on the scene. At this point defendant was standing in a doorway and, in response to police demands to drop his weapon, he fired again this time blowing the windshield out of a police cruiser. The police officers then opened fire and one of the bullets struck defendant in the left eye and exited through his left ear. This ended the affray and, perhaps miraculously, left defendant with partial blindness, partial deafness, and the inability to recall anything which occurred after he was cleaning a gun at home and before he woke up in the hospital. The People concede that this amnesia is genuine.[1]
Defendant moved for a determination whether he was fit to proceed to trial. GPL 730.10 (subd. 1) provides that: “ ‘ Incapacitated person ’ means a defendant who as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense.” Following appro *433 priate examinations the court found that insofar as defendant’s general mental state was concerned he was suffering from no mental disease or defect which would hinder him at trial except for the loss of memory. On this precise branch of the case there is no dispute. It was determined that he understood the charges against him and the question was narrowed to the point with which we are concerned, viz., could defendant assist in his defense if he could not recall the events constituting the charges against him? The court concluded that defendant should stand trial, that the District Attorney should supply defense counsel with all the relevant evidence, and that the safeguards set forth in Wilson v. United States (391 F. 2d 460), noted subsequently herein, should apply.
Upon the determination that he was fit to stand trial defendant decided to plead guilty to reckless endangerment, first degree, in satisfaction of the charges in the indictment. The court indicated to defendant that his sentence on this plea would not exceed four years. Before accepting the plea the court went to great lengths in laying a foundation to support the voluntariness of the plea. Witness’ statements, furnished to the defendant, regarding the shootout were read into the record and photographs of the police vehicle allegedly shot up by defendant were introduced. The court’s rationale in doing this was first, to furnish defendant with all available facts and, also, to indicate to him the degree and extent of evidence against him to support the charges in the indictment so that defendant, even though he could not remember the event, would be in no doubt that it happened and that he was the culprit. The court then explained to defendant the various rights he was waiving by foregoing a trial and then explained that “ you can plead guilty without admitting your guilt in a situation that you are placed in as long as you realize that that’s what you are doing, that you are admitting your guilt. You are saying I’m guilty not because I remember it but because the evidence that has been presented to me indicates to me that I am guilty and I don’t want to run that risk. ’’ Defendant, having had continuing consultations with his attorney and family over an extended period of time, indicated that that was the basis on which he sought to plead whereupon, after several more searching questions by the court, the plea was accepted.
*434 Defendant’s arguments on appeal are correlative. His contention that he was unfit to stand trial as a matter of law under OPL 730.10 (subd. 1) leads to his other contention that, because of the order finding him fit, his guilty plea was forced and therefore involuntary.[2] These points, however, are but branches of the central issue, to wit, whether inability to remember the crucial events renders the defendant unfit to assist in his own defense as that incapacity is contemplated under OPL 730.10 (subd. 1) or under the due process or equal protection clauses ; or even, perhaps, under the Sixth Amendment.
First, it would be useful to examine the nature of the plea which, in the context in which it was taken in this case, approaches the nolo contendere concept operative in the Federal courts. Defendant here could not honestly confess his guilt because of his amnesia, but, nevertheless he found himself in a position, considering the overwhelming evidence against him, where a plea to a lesser charge seemed quite the prudent course. As stated by Mr. Justice White in North Carolina v. Alford (400 U. S. 25, 36): “ Implicit in the nola contendere cases is a recognition that the Constitution does not bar imposition of a prison sentence upon an accused who is unwilling expressly to admit his guilt but who, faced with grim alternatives, is willing to waive his trial and accept the sentence. ’ ’ There is no doubt but that in this case, as in Alford where a guilty plea was also at issue, defendant’s plea “ represents a voluntary and intelligent choice among the alternative courses of action open * * * That he would not have pleaded except for the opportunity to limit the possible penalty does not necessarily demonstrate that the plea of guilty was not the product of a free and rational choice, especially where the defendant was represented by competent counsel whose advice was that the plea would be to the defendant’s advantage ” (400 U. S., at *435 p. 31). The rule is no different in New York (People v. Nixon, 21 N Y 2d 338; People v. Foster, 19 N Y 2d 150).
The larger question here is not whether defendant knew what he was doing at the time he changed his plea to guilty (and he clearly knew what he was doing); but whether he whs put into the position of having to plead guilty because of a mental condition which would have prevented him from assisting in his own defense at a trial. Although counsel raises formidable arguments in defendant’s behalf, we are unwilling to hold that defendant suffered such incapacity as is contemplated under CPL 730.10 (subd. 1) or such actual incapacity as would deprive him of constitutional rights were he to go to trial.
Stripped to its core, defendant’s argument is that no person can assist in his own defense, or, no lawyer can properly represent a client, who is unable to furnish facts concerning the event charged against him such as names of witnesses, times, physical^ and mental condition, etc. Here, argues defendant, there is some evidence that he was intoxicated at the time of the shootout; yet he is unable to develop this so as possibly to use it for purposes of casting reasonable doubt on the intent element of the crimes charged in the indictment as would be permitted under section 15.25 of the Penal Law.[3] And, it is argued, in other cases perfectly good alibi claims would be lost to counsel as they are lost to the defendant were we to rule that amnesia is not an incapacitation. (This assumes, of course, that for some reason or other genuine alibi witnesses would not step forward of their own volition.)
There is absolutely no authority that CPL 730.10 (subd. 1) contemplates any situation other than defendant’s mental imbalance at the time of trial. Admittedly, that provision can literally be read to mean that amnesia, a persisting condition, could constitute a present defect which affects the defendant’s ability to assist in his own defense. However, we are not prepared to hold that the Legislature had anything in mind in enacting this provision other than the situation where the defendant, because of a current inability to comprehend, or at least a severe *436 impairment to that existing mental state, cannot with a modicum of intelligence assist counsel. This interpretation is borne out in the Practice Commentary attending CPL 730.10 where the seminal case Dusky v. United States (362 U. S. 402) is quoted, thus: “the ‘ test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him.’ ” (Denzer, Practice Commentary, McKinney’s Cons. Laws of N. Y., Book 11A, CPL 730.10, p. 332). Defendant here was perfectly rational and sane at the time he would have stood trial had he so opted.
There is a growing body of authority addressed to the question here presented. In no case yet reported has it been held .that inability to recall the events charged because of amnesia constitutes mental incapacity to stand trial. (Amnesia: A Case Study In The Limits Of Particular Justice, 71 Yale L. J. 109 [1961-62]; Capacity To Stand Trial: The Amnesic Criminal Defendant, 27 Maryland L. Rev. 182 [1967]; Ann., Amnesia — Criminal Capacity, 46 ALR 3d 544 [1972].) In the only other reported case in New York (People v. Soto, 68 Misc 2d 629), Judge Altimabi held, in a well considered opinion relying heavily on Wilson v. United States (391 F. 2d 460, supra) that an amnesic defendant was entitled to a fair trial and such could be accorded where (as here) the prosecutor makes full disclosure to counsel and where defendant is able intelligently to discuss his case with counsel.. The two most often cited cases on this point are the Wilson case (supra) and State v. McClendon (103 Ariz. 105). (Other cases in point can be culled from the secondary sources above cited.) In Wilson a case-by-ease approach to the amnesic defendant was advocated so that in each situation the Judge would have to prognosticate on the basis of all the circumstances whether defendant was likely to receive a fair trial; and then, at the conclusion of the trial and before imposition of sentence, the Judge would have to decide whether defendant did, in fact, receive a fair trial — this by the application of certain tests advocated by the court.[4] The defendant in *437 McClendon, like defendant in the instant case, suffered amnesia resulting from a head injury occurring directly in connection with the events constituting the crime for which he was charged. The McClendon court also counseled that no hard and fast rules should be formulated in this area, and adopted the view taken by the Pennsylvania Supreme Court in Commonwealth ex rel. Cummins v. Price (421 Pa. 396).[5]
When it is considered that the result of an order finding defendant unfit for trial in these circumstances would be outright release, assuming the amnesia is permanent and there is no other mental defect sufficient to warrant commitment under CPL art. 730, it can be more easily understood why all the courts which have passed on this question have refused to allow amnesia to be classified as the sort of mental defect causing incapacity to stand trial. This certainly is a consideration in balancing the public safety against the individual’s rights; but we do not wish to be understood as making this our prime con *438 sideration since it would not fully meet the constitutional arguments. Rather, we are in accord with the reasoning in Wilson which addresses itself to the question whether defendant can conceivably receive a fair trial; and, after trial, whether defendant did in fact receive a fair trial. This allows for essential case-by-case evaluation. Applying those concepts to this case we can see that the court could easily have determined (as indeed it did) that defendant’s trial would be fair. The alleged crime was played out in front of an audience and the overwhelming evidence, all of which was available to defendant, pointed to his guilt. From this evidence it could be determined that defendant was probably intoxicated. Had they been willing to risk the consequences, defendant and his counsel might have gone to trial on the question of defendant’s inability to form the requisite intent to commit the crimes charged because of intoxication. Coupling the prosecution’s evidence on this point with defendant’s history of alcoholism, which defendant was perfectly capable of supplying counsel and of course capable, also, of testifying to, would have appeared to be the only course open if the decision to stand trial were made and, indeed, this is argued to us in defendant’s brief. It is not explained to us, however, how defendant’s lack of memory could actually have crippled his defense in this case in light of the nature of the crime and the evidence possessed by the prosecutor. It cannot' be said that the decision to plead guilty to a lesser charge would not have been the most astute decision under these circumstances even had defendant been able to recall the events. There is in this case, then, no indication that defendant was deprived of any of his constitutional rights or that the court was in error in denying defendant’s CPL 730.10 (subd. 1) motion.
As a guideline for future cases in which defendant claims inability tó stand trial due to amnesia proved to be genuine, we approve of a. CPL 730.10 (subd. 1) motion (for lack of a better procedural devine and although we have held it does not contemplate retrograde amnesia) whereupon the Judge to whom it is. addressed shall determine whether, under all the circumstances and with regard to the nature of the crime and the availability of evidence to the defendant, it is likely he can receive a fair trial. If the decision upon the motion is that defendant is not *439 incapacitated due to the amnesia, then the defendant may choose either to proceed to trial, after which he can move for evaluation of the fairness of the trial (cf. Wilson v. United States, 391 F. 2d 460, supra), or he may opt to plead guilty to the best terms he can get.
There is no reason to remand this case for conformance to the procedures just outlined since the trial court expressly made defendant’s trial subject to the Wilson tests, which, as clearly indicated in that case, could be applied at the conclusion of trial. Defendant thus had the benefit of knowing the full extent of the available options.
The order should be affirmed.
Chief Judge Breitel and Judges Jasen, Jones, Waohtlbr, Rabin and Stevens concur.
Order affirmed.

. One of the most common causes of amnesia is severe head injury (see Amnesia: A Case Study In The Limits of Particular Justice, 71 Yale L. J. 109, 110-111; Tuchler, A Review of the Amnesic States: The Significance of Retrospective Falsification, Journal of Forensic Sciences, vol. 2, No. 3, p. 263; 1 Am. Jur., Proof of Facts, p. 507).

. The People contend that defendant is not entitled to bring this appeal since the guilty plea serves as a waiver of the right to contest the pretrial order made pursuant to defendant’s GPL 730.10 (subd. 1) motion. Where, as here, however, a substantial contention is raised as to the voluntariness of the guilty plea because of that pretrial order, there is no question but that the defendant has standing to appeal (see People v. White, 32 N Y 2d 393, 399). Issues stemming from a guilty plea which involve the legality of the sentence or the voluntariness of the plea itself are always appealable (People v. Lynn, 28 N Y 2d 196, 203).

. Section 15.25 of the Penal Law provides that: “Intoxication is not, as such a defense to a criminal charge; but in any prosecution for an offense, evidence of intoxication of the defendant may be offered by the defendant whenever it is relevant to negative an element of the crime charged.” '

. “ In making these findings the court should consider the following factors:
“ (1) The extent to which the amnesia affected the defendant’s ability to consult with and assist his lawyer.
*437 “ (2) The extent to which the amnesia affected the defendant’s ability to testify in his own behalf.
“ (3) The extent to which the evidence in suit could be extrinsically reconstructed in view of the defendant’s amnesia. Such evidence would include evidence relating to the crime itself as well as any reasonably possible alibi.
“ (4) The extent to which the Government assisted the defendant and his counsel in that reconstruction.
“ (5) The strength of the prosecution’s ease. Most important here will be whether the Government’s case is such as to negate all reasonable hypotheses of innocence. If there is any substantial possibility that the accused could, but for his amnesia, establish an alibi or other defense, it should be presumed that he would have been able to do so.
“ (6) Any other facts and circumstances which would indicate whether or not the defendant had a fair trial.” (391 F. 2d, at pp. 463-464).

. Part of the language of the Cummins case cited with approval in McClendon is as follows: “ we are constrained to hold that defendant is not entitled at this time (1) to a discharge from the indictment for murder, or (2) to a stay of proceedings under the aforesaid common law test or under the Mental Health Act. This defendant (we repeat) is able to comprehend his position as one accused of murder, is fully capable of understanding the gravity of the criminal proceedings against him, and is as able to cooperate with his counsel in making a rational defense as is any defendant who alleges that at the time of the crime he was insane or very intoxicated or completely drugged, or a defendant whose mind allegedly went blank or who blacked out or who panicked and contends or testifies that he does not remember anything.” (421 Pa., at p. 406, cited in McClendon, 103 Ariz., at p. 108).