Gabrielli, J.
The questions presented in this appeal may be phrased as follows: (1) having found that reasonable ground existed to believe that the defendant was an incapacitated person, did the County Court’s failure to provide the defendant with an examination by two qualified psychiatrists, as required by CPL 730.20 (subd 1), deprive the accused of his right to a full and impartial determination of his mental capacity to stand trial; and (2) by his plea of guilty, did the defendant waive his right to the proceedings mandated by CPL article 730? Since we are of the opinion that the first question must be answered in the affirmative and the second in the negative, we modify the order of the Appellate Division *169 which affirmed Armlin’s conviction, and remit the case to the County Court for a hearing to determine whether the defendant was competent at the time of sentencing (CPL 730.20).
On September 15, 1972, the defendant, who was charged with having entered a Johnstown, New York, home in the early morning hours of August 10, 1972 and forcing a 12-year-old girl to engage in sexual intercourse, was indicted on two counts of burglary in the first degree and for rape in the first, second and third degrees. Prior to his arraignment on these charges, Armlin’s assigned counsel, who had in his possession medical information indicating that the defendant was a "chronic undifferentiated schizophrenic” suffering from "Acute psychotic reaction with delusions of grandeur”, moved for an examination of the defendant "to determine his sanity” on the ground that Armlin was "insane, incompetent and incapable of understanding the charge or proceedings against him or of making his defense”.
On December 29, 1972, the County Court Judge made an order which, pursuant to CPL 730.20 (subd 1), directed the Superintendent of Utica State Hospital to cause an examination of the defendant’s mental condition by "two qualified psychiatrists”, the court believing that reasonable ground existed that the defendant "is in such a state of idiocy, imbecility or insanity that he is incapable of understanding the charge, or of making his defense”.
On January 11, 1973, the County Court Judge made yet another order, committing the defendant to Utica State Hospital "for a reasonable period, for treatment, observation, examination and report as to his physical and mental condition”, the court being of the opinion that Armlin was then "in need of medical treatment” and that on this date there was "reasonable ground for believing that said defendant may be insane or may be a person of unsound mind and incapable of understanding the proceeding herein.”
In accordance with this latter order, the Sheriff of Fulton County was to transport Armlin to Utica and to return him to the Fulton County Jail upon completion of the examination, the results to be reported to the court by the Director of the Psychiatric Division of the Hospital. The record is barren of any evidence that either of the orders were complied with, but it may fairly be concluded that in lieu of complying with either order, arrangements were made for a psychiatric examination at the Fulton County Mental Health Clinic, since on *170 January 25, 1973, Armlin was examined at that facility by a single psychiatrist, Dr. Leonard Rockmore, who rendered his report on February 5, 1973.
According to the psychiatrist’s report, Armlin stated that when he learned his brother had been killed in action in Viet Nam, he enlisted in the military service in an effort to retaliate for his brother’s death. During his tour of duty in Viet Nam, Armlin was awarded four Purple Hearts. It appears that Armlin’s service records contain medical opinions indicating that he was a chronic undifferentiated schizophrenic who suffered an acute psychotic reaction with delusions of grandeur. The record does not indicate the date of these military psychiatric findings, but, after securing his honorable discharge from military service and only a short time before he was charged with these crimes, Armlin was treated as a psychiatric outpatient at the Veteran’s Hospital.
Dr. Rockmore, the sole examining psychiatrist, conceded that Armlin had undergone an "adjustment reaction” upon his return from the armed services, but stated that this was almost universal and did not consider it to be part of a psychopathological emotional disorder. That being the case, he concluded that Armlin was not suffering from any mental disorder and that he was competent to face the charges against him.
The record indicates that no further action was taken by either the County Court or by the defendant in regard to Armlin’s capacity to stand trial, and on the third day of trial Armlin pleaded guilty to rape in the first degree in satisfaction of the entire indictment.
The majority at the Appellate Division held that by pleading guilty and by not objecting and not bringing the noncompliance with the orders to the court’s attention, Armlin waived his right to insist on compliance with the procedure set forth in CPL 730.20 (subd 1) which requires, inter alia, that: "The appropriate director to whom a criminal court issues an order of examination * * * must designate two qualified psychiatrists * * * to examine the defendant to determine if he is an incapacitated person, except that if the director is of the opinion that the defendant may be mentally defective, he may designate one qualified psychiatrist and one psychologist to examine the defendant.” Mr. Justice Kane dissented and argued that "[o]nce * * * the provisions of CPL article 730 are invoked by the trial court at its own instance *171 or by the grant of a motion of a defendant, it is incumbent upon the court to carefully adhere to the statutory provisions.” (43 AD2d 782, 783.) The dissenting Justice further held that there could be no waiver of the safeguards afforded a defendant by CPL article 730 by a subsequently entered plea of guilty since "it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently waive* his right to have the court determine his capacity to stand trial.” (Pate v.Robinson, 383 US 375, 384.)
The law of this State is well settled that a defendant is not entitled, as a matter of right, to have the question of his capacity to stand trial passed upon before the commencement of the trial, if the court is satisfied from the available information that there is no proper basis for questioning the defendant’s sanity (People v McElvaine, 125 NY 596). However, that is not to say that the defendant must in every instance raise the issue of competency to stand trial before the court is required to cause án examination to be made of his sanity. Indeed, the defendant truly in need of a competency examination might not be capable of expressing his need for a psychiatric evaluation. Thus, in People v Gonzalez (20 NY2d 289) this court held that the written psychiatric report of the defendant’s condition together with his statements and attitudes during the trial should have impelled the trial court sua sponte to order a hearing on the issue of the defendant’s competence to stand trial. Similarly, in People v Bangert (22 NY2d 799) we remanded the case to the County Court to conduct a hearing to determine whether the defendant was competent at the time of sentencing on his plea of guilty where doubt as to the defendant’s competency was indicated in the presentence report, even though the question of defendant’s competency was not otherwise raised at any time during the criminal proceedings. Finally, in People v Smyth (3 NY2d 184, 187) this principle was articulated as follows: "If at any time before final judgment in a criminal action it shall appear to the court that there is reasonable ground for believing that a defendant is in such a state of idiocy, imbecility or insanity that he is incapable of understanding the charge, indictment or proceedings or of making his defense, it is the duty of the court to direct him to be examined in these respects.”
Initially, the trial court was sufficiently concerned about the appellant’s fitness to proceed with the criminal prosecution to twice order his psychiatric examination. Its orders were not *172 complied with in several respects, the most significant variance being the failure to obtain the reports of two qualified psychiatrists as required by CPL 730.20 (subd 1). Additionally, we note that the single examining psychiatrist had previously passed upon Armlin’s competence in 1968 when, in an unrelated matter, he concluded that the defendant had the mental capacity to stand trial. Having made the threshold determination that psychiatric inquiry was indicated, the trial court’s failure to secure the second psychiatric report, as required by CPL 730.20, can hardly be viewed as an insubstantial error in light of the appellant’s prior history of mental illness. Once the procedure mandated by CPL article 730 had been invoked, the defendant was entitled to a full and impartial determination of his mental capacity (43 AD2d 782, 783). This Armlin did not receive.
Although it is conceded that the defendant did not receive the examination required by the Criminal Procedure Law, the People argue that Armlin’s purported incompetence has not been demonstrated and that his demeanor during the three days of trial and at his sentencing was such that his competency may be inferred from the record. A similar assertion was advanced by the prosecution in Pate v Robinson (383 US 375, 386) in response to which the Supreme Court stated: "While Robinson’s demeanor at trial might be relevant to the ultimate decision as to his sanity, it cannot be relied upon to dispense with a hearing on that very issue.” For precisely the same reason, Armlin’s demeanor may not serve to excuse the trial court’s failure to insist upon adherence to the strictures of CPL article 730.
Lastly, the People contend that by his plea of guilty Armlin waived his right to the mandated competency proceedings. We agree that there is an inherent contradiction in arguing that a defendant may be incompetent, and yet knowingly or intelligently waive his right to have a court determine his capacity to stand trial in accordance with the Criminal Procedure Law (43 AD2d 782, 784; see Pate v Robinson, 383 US 375, 384). Moreover, this court has previously taken cognizance of the principles enunciated in Pate v Robinson (supra) and has held that the issue of competency to stand trial may be raised on appeal despite the absence of any objection to the trial court’s failure to cause the defendant to be examined (People v Bangert, 22 NY2d 799, supra; People v Gonzalez, 20 NY2d 289, supra; People v Hudson, 19 NY2d 137; People v Sprague, 11 NY2d 951; People v Boundy, 10 NY2d 518).
*173 Accordingly, the case should be remitted to the trial court, but before another Judge, for a proper determination of defendant’s mental capacity at the time of sentencing; and if this is found favorably to the People, the order should be affirmed (see People v Hudson, 19 NY2d 137, supra).
Chief Judge Breitel and Judges Jasen, Jones, Wachtler and Fuchsberg concur; Judge Cooke taking no part.
Order modified and case remitted to Fulton County Court for further proceedings in accordance with the opinion herein and, as so modified, affirmed.