86 N.Y.2d 599 (1995)
658 N.E.2d 1012
635 N.Y.S.2d 139
The People of the State of New York, Respondent,
v.
John B. Allen, Jr., Appellant.
Court of Appeals of the State of New York.
Argued September 20, 1995.
Decided November 2, 1995.
Vincent F. Gugino, Buffalo, Linda S. Reynolds and Barbara J. Davies for appellant.
Kevin M. Dillon, District Attorney of Erie County, Buffalo (Denise C. Hochul and John J. DeFranks of counsel), for respondent.
Chief Judge KAYE and Judges SIMONS, BELLACOSA, SMITH and CIPARICK concur with Judge LEVINE; Judge TITONE concurs in result in a separate opinion.
*600 LEVINE, J.
After a jury was selected and sworn and opening arguments scheduled in defendant's trial on charges of attempted murder, attempted aggravated assault upon a police officer, weapons possession, and various drug possession charges, the prosecutor requested and was granted a one-day continuance because his first witness had suffered a heart attack that morning and was hospitalized. The next day, after speaking with the witness' physician, the court informed counsel and the defendant that the heart attack had been massive and the witness would be unavailable for at least seven weeks. The *601 prosecutor requested a second continuance which was denied by the court. The People then moved for a mistrial, which was granted over objection by the defense. In granting the motion for a mistrial, the court found that a mistrial was manifestly necessary owing to the critical nature of the witness' testimony.
On the day defendant's second trial was scheduled to begin, defendant entered a plea of guilty to two counts each of weapons possession, drug possession, and criminal use of drug paraphernalia. As a condition of the plea to the lesser charges, defendant waived his right to appeal, and expressly waived any claim of double jeopardy.
After sentencing, defendant appealed the judgment of conviction to the Appellate Division, arguing that his purported waiver of his right to appeal on the constitutional double jeopardy ground was invalid, and that the trial court erred in finding manifest necessity for a mistrial. The Appellate Division affirmed the conviction holding that although the waiver was invalid, the trial court properly granted the motion for a mistrial based on manifest necessity (204 AD2d 973). Leave was granted to defendant by a Judge of this Court and, for a reason different from that stated by the Appellate Division, we affirm.
Defendant asserts that as a matter of State double jeopardy law (NY Const, art I, § 6) the double jeopardy defense is among the categories of defenses that are not waivable as part of a plea bargain, and thus, that he may raise his double jeopardy claim on this appeal despite his express waiver of the claim as part of his plea bargain. He contends that because the double jeopardy defense has such strong ties with the concept of jurisdiction (see, People v Michael, 48 N.Y.2d 1, 7 [double jeopardy claims need not be preserved to be raised on appeal]), it goes directly to the power of the courts to prosecute the defendant. Thus, he argues, a court has no jurisdiction over a defendant who has objected to a mistrial and, therefore, like other defenses that are fundamental to the integrity of the criminal process, a double jeopardy defense cannot be validly waived.
Defendant's claims are unsupported by our precedents and are otherwise unpersuasive. Thus, we expressly recognized in Michael that "a double jeopardy objection may be waivable * * * in certain unusual cases, as where a defendant explicitly consents to retrial despite a double jeopardy defense" (id., at 7; *602 see also, United States v Scott, 437 US 82, 93 [the Double Jeopardy Clause does not ordinarily bar a second trial when the defendant requests or consents to a mistrial]). Moreover, we later held that when a defendant by the conduct of counsel impliedly consents to a retrial after a mistrial, double jeopardy does not bar a retrial (People v Ferguson, 67 N.Y.2d 383; see also, People v Coppa, 45 N.Y.2d 244, 247). We can discern no substantive basis to make a distinction between an implied consent to retrial, as in Ferguson, and the express waiver of a double jeopardy defense to retrial presented here.
A defendant's claim of double jeopardy is different from those narrow categories of appellate claims that cannot be waived as part of a plea bargain. "Plea bargaining is now established as a vital part of our criminal justice system" (People v Seaberg, 74 N.Y.2d 1, 7). It "enables the parties to avoid the delay and uncertainties of trial and appeal and permits swift and certain punishment of law violators with sentences tailored to the circumstances of the case at hand * * *. The pleading process necessarily includes the surrender of many guaranteed rights but when there is no constitutional or statutory mandate and no public policy prohibiting it, an accused may waive any right which he or she enjoys" (id., at 7).
To be sure, we have recognized narrow exceptions to the general rule that an accused may waive any right he or she enjoys as part of a plea bargain; certain categories of appellate claims may not be waived. "These include the constitutionally protected right to a speedy trial (see, People v Blakley, 34 N.Y.2d 311, 314-315 * * *), challenges to the legality of court-imposed sentences (see, People v Francabandera, 33 N.Y.2d 429, 434, n 2), and questions as to the defendant's competency to stand trial (see, People v Armlin, 37 N.Y.2d 167, 172)" (People v Callahan, 80 N.Y.2d 273, 280). These appellate claims cannot be waived "because of a larger societal interest in their correct resolution" (id., at 280).
"Society has a recognized interest in speedy trials because trial delay may result in the loss of evidence or an accused's inability to respond to criminal charges, thereby compelling innocent persons to plead guilty out of necessity. Because of this societal interest, a defendant may not waive such claims * * *. Similarly, a defendant may not waive the right to challenge the legality of a *603 sentence * * * or his competency to stand trial * * *. These rights are recognized as a matter of fairness to the accused but they also embrace the reality of fairness in the process itself" (People v Seaberg, 74 NY2d, at 9, supra [emphasis supplied]).
None of the societal interests which formed the basis of our decisions in the cases holding that a certain appellate claim is nonwaivable is presented in the case of double jeopardy. For although double jeopardy has jurisdictional overtones (see, People v Michael, 48 NY2d, at 7, supra), the purpose of applying the double jeopardy bar to situations in which no final determination of guilt or innocence has been made is to protect "`the valued right of a defendant to have his trial completed by the particular tribunal summoned to sit in judgment on him'" (United States v Scott, 437 US 82, 92, supra [quoting Downum v United States, 372 US 734, 736]; see, People v Ferguson, 67 NY2d, at 388, supra).
The defendant who expressly waives a double jeopardy defense as part of a plea bargain after a mistrial may forgo the right to be tried by a particular tribunal in exchange for a definite sentence and protection against the possibility of conviction on the highest counts because such waiver does not implicate a larger societal value. The bargain made here is indistinguishable from the "inherent duality in requesting or consenting to a mistrial: the defendant gives up his right to be tried by a particular tribunal, and subjects himself to a second trial, yet also avoids a verdict in a trial which may have been proceeding very poorly for him" (People v Ferguson, 67 N.Y.2d 383, 390, supra).
We note further that our holding today is consistent with waiver of double jeopardy cases from the United States Supreme Court. In Menna v New York (423 US 61, 62), the United States Supreme Court held that a counseled guilty plea does not waive a double jeopardy defense. However, the Court left the door open to an express waiver of double jeopardy protection. The Court qualified its holding: "We do not hold that a double jeopardy claim may never be waived. We simply hold that a plea of guilty to a charge does not waive a claim that  judged on its face  the charge is one which the State may not constitutionally prosecute" (id., at 63, n 2). Indeed, the Supreme Court has, since Menna, held that a voluntary and intelligent guilty plea forecloses a double jeopardy challenge to those pleas where the double jeopardy *604 problem is not evident on the face of the indictment (United States v Broce, 488 US 563, 573). Even more significantly, the Supreme Court has also held that a plea agreement can by its terms expressly waive, for purposes of a subsequent prosecution, a claim of double jeopardy if the agreement is violated (Ricketts v Adamson, 483 US 1).
As the foregoing discussion demonstrates, no policy or societal interest requires us to place double jeopardy in a category with other nonwaivable defenses. Thus, the general rule applies and the defendant is bound by his express waiver of his double jeopardy claim.
Because we hold that defendant validly waived his right to raise his double jeopardy claim, we need not reach the merits of that claim.
Accordingly, the order of the Appellate Division should be affirmed.
TITONE, J. (concurring).
I concur in the majority's result, but only because in my view defendant's double jeopardy claim lacks merit. Unlike the majority, I would hold that double jeopardy claims such as this one fall within the narrow class of issues that cannot be waived as a part of a plea bargain.
We have held that most appellate issues may effectively be waived as part of a plea bargain, but that some are too consequential to permit waiver (see, People v Callahan, 80 N.Y.2d 273; People v Seaberg, 74 N.Y.2d 1). The issues that have previously been included in this category are the constitutional right to a speedy trial (see, People v Blakley, 34 N.Y.2d 311, 314-315), the legality of an imposed sentence (see, People v Francabandera, 33 N.Y.2d 429, 434, n 2) and the competency of the accused to stand trial (see, People v Armlin, 37 N.Y.2d 167, 172). Although Blakley, Francabandera and Armlin predate our holdings in Seaberg and Callahan, the Court used the opportunity presented by those cases to reaffirm the vitality of these categorical exceptions (see, People v Callahan, supra, at 280; People v Seaberg, supra, at 9). Further, the Court has never suggested that the class of nonwaivable issues is limited to the ones that were identified in Blakley, Francabandera and Armlin. Thus, the possibility of other nonwaivable issues remains open.
In my view, if any additional rights are to be added to the already existing list of nonwaivable ones, the right not to be twice placed in jeopardy for the same crime is among them. Certainly, the right is one that has always been assigned *605 special importance in our jurisprudence. We have said that "[t]he constitutional prohibition against double jeopardy is fundamental not only to the process of criminal justice, but to our system of government itself" (People v Michael, 48 N.Y.2d 1, 7 [emphasis supplied]). It not only has "strong ties to the concept of jurisdiction," but also represents "a bulwark against governmental overbearing" (id., at 7). Moreover, we have characterized the right as one "going to the very organization of the court" and have said that a deprivation of the right constitutes such a "basic variance with the mode of procedure mandated by law that [it] impair[s] the essential validity of the criminal proceedings" (People v Voliton, 83 N.Y.2d 192, 195, citing People v Michael, supra). Significantly, these formulations are not mere judicial embellishments; rather, they were used as a basis for distinguishing the double jeopardy right and elevating it above many of the other constitutional guarantees that, notwithstanding their acknowledged importance, are unavailable for appellate review in the absence of a timely and specific assertion (see, People v Voliton, supra; People v Michael, supra).
Manifestly, the Court's characterizations establish the existence of a "larger societal interest" in the "correct resolution" of double jeopardy claims (People v Callahan, 80 N.Y.2d 273, 280, supra; see, People v Seaberg, supra, at 9). Indeed, if the competency of an individual defendant to stand trial (see, People v Armlin, supra), the prompt commencement of trial (see, People v Blakley, supra) and the legality of an individual's sentence (see, People v Francabandera, supra) meet that description (see, majority opn, at 602), it would seem to follow that, a fortiori, the right not to be twice placed in jeopardy for the same crime fits it to a tee. At the very least, this Court's testimonials to the significance of the double jeopardy right make clear that the right is one "recognized as a matter of fairness to the accused" as well as one that "embrace[s] the reality of fairness in the process itself" (People v Seaberg, supra, at 9 [emphasis added]). Thus, the majority's rationale here is out of harmony with our prior case law.
The majority's rationale also falls short when it relies on the waiver analysis in People v Ferguson (67 N.Y.2d 383; see also, United States v Scott, 437 US 82, 93; People v Michael, supra, at 7; People v Coppa, 45 N.Y.2d 244, 247; cf., United States v Broce, 488 US 563, 573; Ricketts v Adamson, 483 US 1) to diminish the preeminence of the double jeopardy right. In Ferguson, the Court was merely called upon to determine *606 whether the defendant had validly consented to a mistrial. Here, in contrast, the defendant most definitely did not consent to a mistrial and consequently, unlike in Ferguson, this defendant's double jeopardy claim had risen to the level of one that was fully ripe. The extent to which such a fully matured double jeopardy claim may be insulated from appellate review by a waiver is an entirely different question on which Ferguson has little to say.
Finally, a rule that withholds recognition of bargained-for waivers of double jeopardy claims is necessary to ensure that the core constitutional right is adequately protected. We have treated the constitutional speedy trial right as a nonwaivable issue because trial delay may diminish the accused's ability to defend thereby prompting the defendant to plead guilty "out of necessity" (People v Seaberg, supra, at 9). Similarly, a defendant who wishes to avoid the expense and discomfort of an unwarranted second trial may also plead guilty out of a sense of compulsion. To allow the People to force a defendant to choose between an unwarranted second trial and a guilty plea accompanied by a waiver of appellate double jeopardy review is to give the People the power to vitiate the right itself.[*] Such a result is not in keeping with the highly protective manner in which we have previously treated double jeopardy.
For all of the foregoing reasons, I would hold that double jeopardy claims such as defendant's cannot effectively be waived through an express condition to a plea bargain. Accordingly, the double jeopardy claim defendant now raises was not forfeited and should be considered on its merits. As to those merits, however, I would further conclude that the right was not violated when the trial court declared a mistrial because of the sudden and unexpected unavailability of a prosecution witness. Although defendant contends that the unavailable witness's testimony was cumulative and that there was therefore no "manifest necessity" for the court's action (United States v Perez, 9 Wheat [22 US] 579, 580; Matter of Nolan v Court of Gen. Sessions, 11 N.Y.2d 114, 119, supra), the witness in question did, in fact, have important evidence  i.e., a statement by defendant elucidating intent  *607 that only that witness was in a position to offer. Thus, the declaration of a mistrial was appropriate despite the defense's objection and the judgment resulting from the continuation of the prosecution was properly affirmed. On that basis and that basis alone, I concur in the Court's affirmance.
Order affirmed.
NOTES
[*] The availability of CPLR article 78 review in the nature of prohibition (see, Matter of Nolan v Court of Gen. Sessions, 11 N.Y.2d 114) does not furnish much comfort to defendants who are unable to afford the expense of additional collateral litigation.