Titone, J.
(concurring). I concur in the majority’s result, but only because in my view defendant’s double jeopardy claim lacks merit. Unlike the majority, I would hold that double jeopardy claims such as this one fall within the narrow class of issues that cannot be waived as a part of a plea bargain.
We have held that most appellate issues may effectively be waived as part of a plea bargain, but that some are too consequential to permit waiver (see, People v Callahan, 80 NY2d 273; People v Seaberg, 74 NY2d 1). The issues that have previously been included in this category are the constitutional right to a speedy trial (see, People v Blakley, 34 NY2d 311, 314-315), the legality of an imposed sentence (see, People v Francabandera, 33 NY2d 429, 434, n 2) and the competency of the accused to stand trial (see, People v Armlin, 37 NY2d 167, 172). Although Blakley, Francabandera and Armlin predate our holdings in Seaberg and Callahan, the Court used the opportunity presented by those cases to reaffirm the vitality of these categorical exceptions (see, People v Callahan, supra, at 280; People v Seaberg, supra, at 9). Further, the Court has never suggested that the class of nonwaivable issues is limited to the ones that were identified in Blakley, Francabandera and Armlin. Thus, the possibility of other nonwaivable issues remains open.
In my view, if any additional rights are to be added to the already existing list of nonwaivable ones, the right not to be twice placed in jeopardy for the same crime is among them. Certainly, the right is one that has always been assigned *605 special importance in our jurisprudence. We have said that "[t]he constitutional prohibition against double jeopardy is fundamental not only to the process of criminal justice, but to our system of government itself” (People v Michael, 48 NY2d 1, 7 [emphasis supplied]). It not only has "strong ties to the concept of jurisdiction,” but also represents "a bulwark against governmental overbearing” (id., at 7). Moreover, we have characterized the right as one "going to the very organization of the court” and have said that a deprivation of the right constitutes such a "basic variance with the mode of procedure mandated by law that [it] impair[s] the essential validity of the criminal proceedings” (People v Voliton, 83 NY2d 192, 195, citing People v Michael, supra). Significantly, these formulations are not mere judicial embellishments; rather, they were used as a basis for distinguishing the double jeopardy right and elevating it above many of the other constitutional guarantees that, notwithstanding their acknowledged importance, are unavailable for appellate review in the absence of a timely and specific assertion (see, People v Voliton, supra; People v Michael, supra).
Manifestly, the Court’s characterizations establish the existence of a "larger societal interest” in the "correct resolution” of double jeopardy claims (People v Callahan, 80 NY2d 273, 280, supra; see, People v Seaberg, supra, at 9). Indeed, if the competency of an individual defendant to stand trial (see, People v Armlin, supra), the prompt commencement of trial (see, People v Blakley, supra) and the legality of an individual’s sentence (see, People v Francabandera, supra) meet that description (see, majority opn, at 602), it would seem to follow that, a fortiori, the right not to be twice placed in jeopardy for the same crime fits it to a tee. At the very least, this Court’s testimonials to the significance of the double jeopardy right make clear that the right is one "recognized as a matter of fairness to the accused” as well as one that "embrace[s] the reality of fairness in the process itself” (People v Seaberg, supra, at 9 [emphasis added]). Thus, the majority’s rationale here is out of harmony with our prior case law.
The majority’s rationale also falls short when it relies on the waiver analysis in People v Ferguson (67 NY2d 383; see also, United States v Scott, 437 US 82, 93; People v Michael, supra, at 7; People v Coppa, 45 NY2d 244, 247; cf., United States v Broce, 488 US 563, 573; Ricketts v Adamson, 483 US 1) to diminish the preeminence of the double jeopardy right. In Ferguson, the Court was merely called upon to determine *606 whether the defendant had validly consented to a mistrial. Here, in contrast, the defendant most definitely did not consent to a mistrial and consequently, unlike in Ferguson, this defendant’s double jeopardy claim had risen to the level of one that was fully ripe. The extent to which such a fully matured double jeopardy claim may be insulated from appellate review by a waiver is an entirely different question on which Ferguson has little to say.
Finally, a rule that withholds recognition of bargained-for waivers of double jeopardy claims is necessary to ensure that the core constitutional right is adequately protected. We have treated the constitutional speedy trial right as a nonwaivable issue because trial delay may diminish the accused’s ability to defend thereby prompting the defendant to plead guilty "out of necessity” (People v Seaberg, supra, at 9). Similarly, a defendant who wishes to avoid the expense and discomfort of an unwarranted second trial may also plead guilty out of a sense of compulsion. To allow the People to force a defendant to choose between an unwarranted second trial and a guilty plea accompanied by a waiver of appellate double jeopardy review is to give the People the power to vitiate the right itself.* Such a result is not in keeping with the highly protective manner in which we have previously treated double jeopardy.
For all of the foregoing reasons, I would hold that double jeopardy claims such as defendant’s cannot effectively be waived through an express condition to a plea bargain. Accordingly, the double jeopardy claim defendant now raises was not forfeited and should be considered on its merits. As to those merits, however, I would further conclude that the right was not violated when the trial court declared a mistrial because of the sudden and unexpected unavailability of a prosecution witness. Although defendant contends that the unavailable witness’s testimony was cumulative and that there was therefore no "manifest necessity” for the court’s action (United States v Perez, 9 Wheat [22 US] 579, 580; Matter of Nolan v Court of Gen. Sessions, 11 NY2d 114, 119, supra), the witness in question did, in fact, have important evidence — i.e., a statement by defendant elucidating intent— *607 that only that witness was in a position to offer. Thus, the declaration of a mistrial was appropriate despite the defense’s objection and the judgment resulting from the continuation of the prosecution was properly affirmed. On that basis and that basis alone, I concur in the Court’s affirmance.
Chief Judge Kaye and Judges Simons, Bellacosa, Smith and Ciparick concur with Judge Levine; Judge Titone concurs in result in a separate opinion.
Order affirmed.

 The availability of CPLR article 78 review in the nature of prohibition (see, Matter of Nolan v Court of Gen. Sessions, 11 NY2d 114) does not furnish much comfort to defendants who are unable to afford the expense of additional collateral litigation.