97 N.Y.2d 482 (2002)
769 N.E.2d 802
743 N.Y.S.2d 45
THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v.
BART ALEXANDER, Appellant.
Court of Appeals of the State of New York.
Argued February 6, 2002.
Decided March 21, 2002.
*483 Legal Aid Bureau of Buffalo, Inc., Buffalo (Vincent F. Gugino, David C. Schopp and Barbara J. Davies of counsel), for appellant.
Frank J. Clark, District Attorney, Buffalo (Raymond C. Herman and J. Michael Marion of counsel), for respondent.
Chief Judge KAYE and Judges LEVINE, CIPARICK, WESLEY and GRAFFEO concur with Judge ROSENBLATT; Judge SMITH dissents and votes to reverse in a separate opinion.

OPINION OF THE COURT
ROSENBLATT, J.
At any time before it imposes sentence, a court in its discrettion may permit a defendant to withdraw a guilty plea (see *484 CPL 220.60 [3]). On the facts before us, we conclude that Supreme Court did not abuse its discretion in denying defendant's motion to withdraw his guilty plea, and we therefore affirm the order of the Appellate Division upholding defendant's conviction.
Defendant was indicted for beating his girlfriend on separate occasions by kicking her in the face, punching her in the stomach, breaking her jaw and dragging her across a hardwood floor. Because an order of protection required defendant to stay away from the victim, the indictment included criminal contempt charges. Counseled by his attorney, defendant entered an Alford plea to criminal contempt in the first degree (Penal Law § 215.51 [b] [v]) in satisfaction of the indictment (see North Carolina v Alford, 400 US 25 [1970]).
While awaiting sentence, defendant moved to withdraw his guilty plea, claiming he was not competent when he entered it. The trial court ordered a psychiatric examination pursuant to Criminal Procedure Law article 730a vehicle to determine whether a defendant is competent to stand trial. In their reports, both examining physicians concluded that defendant was fit to proceed. They stated that he required medication for his "personality disorder with cyclothymic and anti-social features," but that he was neither an "incapacitated person" nor was he suffering from psychosis or impaired cognition. Although the psychiatrists did not focus on defendant's mental condition as of the day he pleaded guilty, they indicated that he entered the guilty plea while "emotionally distraught."[1] The trial court denied defendant's motion to withdraw his plea.
Renewing the motion at sentencing, defendant added that the victim no longer wished to proceed with the charges and that this constituted a change in circumstances such that the guilty plea was a "mistake." The defense contended that the *485 victim was a drug addict who "made up" the charges and regretted it. Defendant further stated that he was physically incapable of kicking the victim in the jaw. Supreme Court again denied defendant's motion. The Appellate Division affirmed the conviction, concluding that the record belied defendant's claim of incompetency. We agree.
Trial judges are vested with discretion in deciding plea withdrawal motions because they are best able to determine whether a plea is entered voluntarily, knowingly and intelligently. It follows that a motion to withdraw a guilty plea will not be granted merely for the asking, for as we have observed in another context, a guilty plea generally "marks the end of a criminal case [and is] not a gateway to further litigation" (People v Taylor, 65 NY2d 1, 5 [1985]). The interest of finality requires no less (see People v Frederick, 45 NY2d 520, 525 [1978]).
With these principles in mind, we have on several occasions upheld trial court decisions denying motions to withdraw guilty pleas. For example, in People v Dixon (29 NY2d 55, 57 [1971]), we noted that "[a] defendant is not entitled to withdraw his guilty plea based on a subsequent unsupported claim of innocence, where the guilty plea was voluntarily made with the advice of counsel following an appraisal of all the relevant factors * * *." Similarly, in People v Feliciano (53 NY2d 645 [1981]), we held that notwithstanding the defendant's claims of innocence, illness and confusion, the trial court did not abuse its discretion in denying defendant's motion to withdraw his guilty plea.[2]
Nevertheless, we have recognized that there are instances in which denial of a motion to withdraw a guilty plea constitutes an abuse of discretion. In People v Englese (7 NY2d 83 [1959]) we held that the trial court erred in denying the defendant's motion where the indictment mislabeled a misdemeanor as a *486 felony. Moreover, in People v Nettles (30 NY2d 841, 842 [1972]) we determined that it was error not to allow the defendant to withdraw a guilty plea that was the result of a "mutual mistake of fact and law" and was further weakened by the defendant's serious illness and low level of education.
Here, we conclude that the trial court did not abuse its discretion in denying defendant's motion. The court was able firsthand to assess whether defendant was alert and knowledgeable enough to plead guilty voluntarily. Under oath defendant told the court that, after consulting with counsel, he understood the nature of the proceedings and that his guilty plea entailed a waiver of various rights. The court then asked defendant whether by tendering an Alford plea he was pleading guilty for fear of being convicted of a higher charge. Defendant said yes. There was not the slightest indication that defendant was uninformed, confused or incompetent.[3]
Defendant's protestations as to his incompetence, confusion and innocence ring hollow. Concededly, defendant had a history of mental illness for which he was taking medication. But even if (as he claims) he failed to take his medication on the day in question, we are unable to conclude on this record that the failure so stripped him of orientation or cognition that he lacked the capacity to plead guilty. Moreover, that a defendant is "emotionally distraught" when pleading guilty affords no basis to withdraw the plea (see People v Green, 75 NY2d 902 [1990]). Furthermore, defendant's familiarity with the criminal justice system speaks volumes. He is a veteran offender well oriented with criminal proceedings, having been arrested approximately 51 times for 122 crimes, resulting in 42 guilty pleas (see People v Frederick, 45 NY2d at 525 [noting that "(d)efendant was not a novice in criminal affairs and was, therefore, schooled in the nature of criminal proceedings"]).
*487 As to defendant's protestations of innocence, we note that unlike an ordinary guilty plea, an Alford plea does not involve a recitation of guilt. On the contrary, it is typically tendered when a defendant, without admitting culpability (or while maintaining innocence), negotiates a guilty plea for fear of being convicted of a higher charge or being exposed to a greater sentence. Inasmuch as defendant tendered his plea without admitting guilt, his claims of innocence are not incompatible with his Alford plea (see Alford, 400 US at 37). As such, they form no basis to attack the plea (see Dixon, 29 NY2d at 57). Furthermore, we cannot fault the trial court for rejecting defendant's claim that the victim's broken jaw and other injuries were fabricated or that he lacked the physical ability to kick her. Such unsupported allegations simply raise issues of credibility, which a trial court in its discretion may summarily resolve against the defendant (see id. at 56). Indeed, contrary to his protestations of innocence, defendant did not plead guilty to kicking the victim or breaking her jaw, but rather to criminal contempt for violating an order of protection in a different incident of physical abuse.
Nor can we ignore the surrounding circumstances, particularly the extent to which defendant based his motion on the victim's purported desire to drop the charges. Our dissenting colleague contends that these circumstances argue for reversal. We disagree. A victim's reluctance to go forward with a charge is not a sufficient basis to justify the withdrawal of a guilty plea. This is particularly true in domestic violence cases. Courts and commentators have long recognized the cycle of domestic abuse in which beatings are followed by the victims' unwillingness to pursue the charges.[4] It is regrettable enough that this pattern exists, let alone that it should be used in support of a motion to withdraw a guilty plea.
*488 In sum, we conclude that on the facts before us Supreme Court did not abuse its discretion in denying defendant's motion to withdraw his guilty plea.
Accordingly, the order of the Appellate Division should be affirmed.
SMITH, J. (dissenting).
Because I believe the trial court was obligated to determine defendant's fitness to proceed at the time of his plea and because I believe that the failure of defendant to admit, and the failure of the prosecutor to show, a factual basis for the plea undermined a fundamental principle by which criminal proceedings should be conducted, I dissent.
Defendant pleaded guilty to criminal contempt in the first degree in violation of Penal Law § 215.51 (b) in that "with intent to harass, annoy, threaten or alarm [his girlfriend], a person on whose behalf [an] order [of protection] was issued, [he] subjected her to physical contact."[1] Penal Law § 215.51 states:
"A person is guilty of criminal contempt in the first degree when: * * * (b) in violation of a duly served order of protection, or such order of which the defendant has actual knowledge because he or she was present in court when such order was issued, or an order of protection issued by a court of competent jurisdiction in this or another state, territorial or tribal jurisdiction, he or she: * * * (v) with intent to harass, annoy, threaten or alarm a person for whose protection such order was issued, strikes, shoves, kicks or otherwise subjects such other person to physical contact or attempts or threatens to do the same."
*489 Defendant gave an Alford plea in which he pleaded guilty to the charge but did not allocute any factual basis for the plea. Moreover, the prosecutor did not indicate what proof could be offered to demonstrate defendant's guilt.
Defendant had a history of mental illness which required him to take certain medications. Following his plea on January 15, 1999, defendant was assigned a new counsel. That counsel moved to vacate the guilty plea on the grounds that the defendant had not taken his medications. The court ordered a psychiatric examination pursuant to article 730 of the CPL. While the resulting psychiatric reports indicated that the defendant was fit to proceed at the time of the sentencing, they did not indicate that the defendant had been fit to proceed on the date of his plea.
On this appeal, defendant argues that he was not fit to proceed on the date of his plea, that the plea proceeding was inadequate and that the judge should have made further inquiry into the circumstances of the incident. While he recognizes that an Alford plea does not require him to admit facts demonstrating that he violated the statute, defendant contends that his plea was not knowing or voluntary and did not meet due process standards under the Fourteenth Amendment of the United States Constitution and article I, § 6 of the New York State Constitution.
In this case, the court had an obligation to assure itself that the defendant was competent at the time of his plea. Moreover, the court should not have accepted an Alford plea without some indication from the prosecution of the proof that he had against the defendant. This is particularly true where defendant alleges that the complainant, a former girlfriend and a drug addict, lied about the physical abuse, that she admitted lying in letters to him, that he was physically incapable of kicking her in the jaw and that she was angry that defendant was involved with another woman. Since Penal Law § 215.51 (b) (v) requires actual physical contact or the threat of physical contact and no factual basis for the plea was offered by the defendant or the prosecutor, the plea violated a fundamental principle of New York law, that no person should be found guilty without some evidence from that person or the prosecutor that there is a factual basis for the plea.
It is a cardinal rule in New York that some principles of law go to the validity of the proceeding itself. The failure to adhere to these principles is reviewable on appeal without preserving the issue because the manner of proceeding is "proscribed by *490 law" (see Cancemi v People, 18 NY 128, 138 [1858]; People v Patterson, 39 NY2d 288, 295 [1976], affd 432 US 197 [1977]). In Cancemi v People, this Court held that a person could not be convicted by a jury of less than 12 persons, even with the defendant's consent. In People v McLucas (15 NY2d 167 [1965]), this Court held that a comment by the trial court in the charge on the failure of the defendant to take the stand required reversal of the conviction even in the absence of an objection. In People v Ermo (47 NY2d 863 [1979]), this Court upheld the reversal of a conviction by the Appellate Division where a defendant had been denied the right to counsel while being questioned by the police and in the absence of an objection. Similarly, a conviction in this case violates the principle of law that a person should not be convicted, even on an Alford plea, without some indication on the record that there is a factual basis for the conviction.[2]
Accordingly, I dissent.
Order affirmed.
NOTES
[1] It is not surprising that the article 730 reports did not focus on defendant's mental condition at the time he pleaded guilty, given that article 730 deals with a defendant's mental competency at the time of the examination to determine whether the defendant is fit to proceed. Here, two psychiatrists examined defendant and concluded that he was competent and fit to proceed. They did not condition that conclusion on defendant's adherence to his medication program. Although defendant may quarrel with the psychiatrists' conclusion as it relates to his competency on the day of the plea, he does not contend that the trial court in any way failed to comply with the requirements of article 730 (cf. People v Armlin, 37 NY2d 167 [1975]).
[2] We applied similar reasoning in the following cases: People v Ramos (63 NY2d 640 [1984] [defendant may not withdraw his guilty plea based on incorrect advice he received from his attorney off the record]); People v Billingsley (54 NY2d 960 [1981] [court did not abuse its discretion in denying defendant's motion after defendant asserted his innocence]); People v Da Forno (53 NY2d 1006 [1981] [court did not abuse its discretion in denying defendant's motion where defendant claimed plea conditions were misrepresented to him]); People v Mason (48 NY2d 896 [1979] [court did not abuse its discretion in denying defendant's motion where defendant's "faulty memory" exposed him to a longer sentence than he anticipated]); People v Cataldo (39 NY2d 578 [1976] [defendant may not withdraw his guilty plea merely because he misunderstood the nature of the agreement]); see generally Donnino, New York Court of Appeals on Criminal Law §§ 26:32, 26:33, at 26-1726-19.
[3] We appreciate the dissent's criticism over the cursory way in which the court took the Alford plea. It made no factual inquiry of the defense or prosecution to justify defendant's conclusory assertion that he was entering the Alford plea fearful of a more severe conviction. We agree that an Alford plea presupposes a strong showing of guilt which the judge should recognize before accepting the plea (see North Carolina v Alford, 400 US 25, 37 [1970]; Matter of Silmon v Travis, 95 NY2d 470, 475 [2000]; cf. United States v Riascos-Suarez, 73 F3d 616, 622 [6th Cir 1996], citing Fed Rules Crim Pro rule 11 [f]). Although defendant asserts that he was not competent to plead guilty, he has never challenged his Alford allocution and does not do so on this appeal. Indeed, at oral argument defendant expressly disclaimed any intention to pursue that point. Therefore, despite our dissenting colleague's contentions as to noncompliance with Alford criteria, the issue is not before us.
[4] This unfortunate pattern is well documented. Although the abusers' guilt may be clear and provable, many victims of domestic violence decide not to pursue charges for a host of reasons, including fear of retaliation, financial dependence and threats of violence (see e.g. Kirsch II, Problems in Domestic Violence: Should Victims be Forced to Participate in the Prosecution of Their Abusers?, 7 Wm & Mary J of Women & L 383, 393-398 [2001]; Wills, Domestic Violence: The Case for Aggressive Prosecution, 7 UCLA Women's LJ 173, 176-179 [1997]; Note, No-Drop Policies in the Prosecution of Domestic Violence Cases: Guarantee to Action or Dangerous Solution?, 63 Fordham L Rev 853, 870-873 [1994]; Note, The Problem of Using Hearsay in Domestic Violence Cases: Is a New Exception the Answer?, 49 Duke LJ 1041, 1047-1049 [2000]). We note that while defendant was awaiting sentence in the case before us, he was arrested again for another offense in connection with the same victim.
[1] Defendant was originally charged in five counts of an indictment with criminal conduct involving a former girlfriendin count one with assault in the second degree in that he intentionally kicked her in the face and broke her jaw; in count two with aggravated criminal contempt in that he disobeyed a lawful mandate of the court by intentionally breaking her jaw; in count three with disobeying an order of protection by subjecting her to physical contact; in count four with assault in the third degree by causing physical injury by punching her in the stomach; and in count five with assault in the third degree in that he caused physical injury to her by dragging her across hardwood floors.
[2] In Matter of Silmon v Travis (95 NY2d 470 [2000]), this Court noted that at the time of the Alford plea, there was record evidence that the defendant had committed the crime.