■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL BISNETT and ALONZO WILSON, Appellants.—Appeals by the defendants from two judgments (one as to each of them) of the Supreme Court, Kings County (Kramer, J.), both rendered May 14, 1986, convicting them of criminal sale of a controlled substance in the first degree, criminal possession of a controlled substance in the first degree, and criminal possession of a weapon in the third degree, upon jury verdicts, and imposing sentences.

Ordered that the judgments are affirmed.

Prior to trial, the defendant Michael Bisnett moved for a severance on the ground that he was physically unable to participate in the proceedings or assist in his defense as a result of a medical condition known as obstructive sleep apnea. During sleep his throat would close blocking the flow of air to the lungs causing him to wake up numerous times during the night in order to breathe. Because he was never able to achieve an unbroken period of sleep he was constantly drowsy during the day and fell asleep involuntarily. In support of his motion the defendant Bisnett submitted a letter from the physician who had treated this condition, attesting to the fact that he did suffer from obstructive sleep apnea. The court denied the motion because the letter did not indicate that as a result of his condition the defendant Bisnett was unfit to stand trial, but gave Bisnett leave to renew his motion "upon a properly substantiated affidavit". During the pretrial hearings the court informed the defendant Bisnett and his attorney that it would do whatever was necessary to assure that Bisnett could participate in the proceedings and assist in

his defense, including granting him frequent adjournments, allowing testimony to be read back to him by the court stenographer, and allowing witnesses to be recalled. The trial proceeded and the defendant Bisnett never sought to avail himself of any of the remedies offered by the court. As the testimony was drawing to a close he submitted an affidavit from his doctor which stated that because of his condition he was physically unable to stand trial. On this evidence the defendant Bisnett moved for a mistrial. The court decided to hold a hearing to determine if in fact he was physically unfit to continue the trial. At the hearing Bisnett's doctor testified that he had severe obstructive sleep apnea which caused him to fall asleep involuntarily whenever he was sedentary. It was his opinion that given the defendant Bisnett's condition he was not fit to stand trial since he was unable to assist in his defense. On cross-examination the doctor admitted that he was surprised by the fact that Bisnett had not taken advantage of any of the remedies provided by the court to assure that he could fully participate in the proceedings. He also conceded that the defendant Bisnett's counsel had suggested he use the phrase "unfit to stand trial or assist in his defense" in the affidavit he completed. The court found that the defendant Bisnett was physically capable of participating in the trial and assisting in his own defense, based on its own observations of Bisnett during the trial and its conclusion that the doctor's testimony was simply not sufficient for it to find that the defendant Bisnett was unfit.

On appeal, the defendant Bisnett argues that the court erred in finding him physically fit to stand trial not only because the evidence did not warrant such a conclusion but because the hearing which the court ordered on this issue did not comply with the procedures outlined in CPL article 730. However, CPL article 730 defines the procedures to be followed in determining a defendant's fitness to proceed with trial as a result of "mental disease or defect" and CPL 730.10 (1) defines an "incapacitated person" as a "defendant who as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense". This definition applies only to persons who are unfit to stand trial as a result of "mental imbalance" (see, People v Francabandera, 33 NY2d 429, 435; see also, Bellacosa, Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 730.10, at 258). Bisnett does not claim that he is suffering from a mental disease or defect, but merely that his physical problems make it difficult for him to assist in his defense.

Therefore, the procedures mandated by CPL article 730 for a hearing to determine whether a defendant is an incapacitated person do not apply to him *(cf., People v Francabandera, supra)*. Where, as in this case, a defendant is claiming a physical incapacity to stand trial, the court may still be required to hold a hearing once sufficient doubt is raised as to the defendant's competency to stand trial *(see, People v Jackson, 88 AD2d 604; Albritton v Collier, 349 F Supp 994)*. However the extent and content of the hearing are within the discretion of the court *(see, People v Jackson, supra)*. Based on the record before us, we cannot say that the decision of the trial court was erroneous, especially since the court made available to the defendant Bisnett various remedies to assure that he would be fully able to assist in his defense *(see, People v Brown, 136 AD2d 1, 12; cf., People v Jackson, supra)*.

The defendant Alonzo Wilson contends that it was error for the court not to suppress certain statements he made to the police on August 1, 1984. The facts established at the *Huntley* hearing indicate that on the date in question Lieutenant Willis Krebs and Sergeant Michael Geraghty were continuing an ongoing investigation of a drug operation of which the defendant Wilson was a part. As part of their investigation, the officers were pretending to be corrupt and had been receiving bribes from the drug dealers. On August 1, 1984, Krebs and Geraghty saw the defendant Wilson drive up to one of the locations used by the operation to process and sell cocaine. Geraghty informed Krebs that a few days previously, Wilson had been arrested for driving without a license. The officers approached Wilson and began to question him about his license and the registration of the car he was driving. Wilson admitted that he did not have a license but he alleged that the car belonged to the defendant Bisnett and he had authority to use it. Krebs asked Wilson to accompany the officers to the precinct so they could verify his story. Krebs drove Wilson's car to the precinct while Wilson accompanied Geraghty in the officers' unmarked vehicle. When they arrived at the precinct parking lot, Krebs asked Wilson if he knew who he (Krebs) was, and Wilson responded that he was aware of Krebs' involvement in the drug operation. They spoke about arranging a meeting between Krebs and people from the operation and Wilson told Krebs to call Bisnett if he needed to get in touch with him, and Bisnett would relay any messages. At the end of the conversation, Wilson asked if, as a show of good faith, Krebs would release him without arresting him or issuing him a summons.

At the hearing, Krebs conceded that the officers had not advised Wilson of his *Miranda* rights. The hearing court found that Wilson was in custody during the time he was being driven to the precinct but that the custody ended when they reached the precinct parking lot. Although there is some indication that Wilson would not have engaged in the type of conversation he had with Krebs if he believed he was in custody, we find that an innocent reasonable person in Wilson's position would have believed himself to be in custody at the time he made his statements to Krebs *(see, People v Yukl,* 25 NY2d 585; *People v Grant,* 80 AD2d 862). However, admission of these particular statements constituted harmless error since there was overwhelming evidence of the defendant Wilson's guilt *(see, People v Crimmins,* 36 NY2d 230, 242).

We also reject Bisnett's contention that the admission of Wilson's conversation with Krebs violated his right to confront witnesses against him because Wilson's statements implicated him in the drug operation *(see, Cruz v New York,* 481 US 186; *Bruton v United States,* 391 US 123). The statements in question were admissible against Bisnett pursuant to a recognized exception to the hearsay rule, to wit, as statements of a coconspirator made in the course of and in furtherance of the conspiracy to solicit Krebs' cooperation with and participation in the conspiracy *(see, People v Sanders,* 56 NY2d 51; *People v Rastelli,* 37 NY2d 240, 244). Accordingly, Bisnett's Sixth Amendment right to confrontation was not violated. Further, the defendant Bisnett's argument that the People did not establish a prima facie case of conspiracy sufficient to introduce into evidence certain wiretapped conversations must also fail. The record reveals that there was sufficient evidence, independent of the taped conversations, to establish a prima facie case of conspiracy *(see, People v Salko,* 47 NY2d 230, *rearg denied and mot to amend remittitur granted* 47 NY2d 1010).

We also note that the court did not improvidently exercise its discretion in limiting the cross-examination of Frank Solomon, a former codefendant, with regard to the maximum sentence he would have faced had he not pleaded guilty *(see, People v Cobos,* 57 NY2d 798; *People v De Vito,* 56 NY2d 846). Nor was it necessary for the Trial Judge to recuse himself since there is nothing in the record to indicate that any of his rulings were the result of prejudice against the defendants *(see, People v Moreno,* 70 NY2d 403; *People v Smith,* 63 NY2d 41, 68).

We have reviewed the defendants' remaining contentions

and find them to be without merit. Bracken, J. P., Kunzeman, Weinstein and Kooper, JJ., concur.