(October 12, 1995)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GLEN McGEE, Appellant. [632 NYS2d 280] —Peters, J. Appeal from a judgment of the County Court of Rensselaer County (Dwyer, Jr., J.), rendered June 25, 1990, upon a verdict convicting defendant of the crimes of murder in the second degree (two counts) and robbery in the first degree.

On April 9, 1987, the body of Lucille Guertin, a bartender at Gage's Tavern in the City of Troy, Rensselaer County, was found in the back room of the tavern. She had been strangled, her car keys and car taken, money which would have been kept hidden in the tavern missing, and both the tavern's cash register and her wallet left empty. Three days later, defendant was arrested and subsequently indicted for three counts of second degree murder and one count of first degree robbery.

After a *Sandoval* hearing, the trial commenced. Defendant did not dispute that he had committed the murder, but rather proffered that because of his advanced alcoholism and a family history of abusive, alcoholic and mentally ill parents, he should not be held criminally responsible. The testimony at trial confirmed that defendant was drinking heavily and was intoxicated in the hours preceding the murder. Defendant's girlfriend testified that defendant called her between the hours of 4:30 A.M. and 6:00 A.M., claiming that he had money that he owed her. When he arrived at her apartment at approximately 6:30 A.M., he was shaking, crying and smelled of alcohol. At that time, he told her that he thought he had strangled someone. She testified that he told her that he could not remember exactly what happened but that he remembered that he choked a woman until the blood ran out of her mouth. He stated that he did not know why he did it but thought that he did it "for the money, but probably not, maybe not". He further told her that he took her car and dumped it in Troy. Defendant thereafter handed her approximately $103. Later, she drove him to the home of another individual from whom he retrieved a jacket containing rolled coins stolen from the tavern. She then transported him to an area in South Troy where he had disposed of the victim's car.

David Butler, a self-described jailhouse paralegal with whom defendant was incarcerated after the murder, testified that defendant told him that he murdered Guertin by choking her and that his motive was sexual gratification. Butler further claimed that because defendant told his counsel the same thing, he advised defendant to move for a change of attorneys and assert either an insanity or intoxication defense. During the trial, a motion was made to obtain all records in the People's possession which pertained to Butler's credibility. After the People purportedly complied and Butler testified, defense counsel unsuccessfully moved to recall Butler to impeach his credibility upon discovering that his prison file revealed a letter from the District Attorney recommending the denial of his parole. At the conclusion of the trial, defendant unsuccessfully moved to have the jury charged with the affirmative defenses of mental disease or defect and extreme emotional disturbance. County Court instead issued a lengthy charge on intoxication.

During deliberations, the jury requested County Court to "redefine/clarify the concept of aware of the consequences of his actions, as far as the law is concerned" with regard to count one of the indictment, murder in the second degree (Penal Law § 125.25 [1]). County Court explained that the concept of "awareness" pertained only to the second count of the indictment, depraved indifference murder (*see,* Penal Law §§ 125.25, 15.05), and the culpable mental state when pleading the defense of intoxication (*see,* Penal Law § 15.25). It thus recharged the jury on the definition of intent. Defense counsel objected to the court's response and, subsequent to the jury foreperson's acceptance of the reinstruction, submitted a request for a supplemental instruction on the issue of awareness. County Court denied the request.

The next day, continuing their deliberations, the jury submitted the following question to County Court: "In order for first degree robbery as charged in count number four to have occurred, is it necessary that the intent to take property precede or co-exist in time with the application of or the threat of the use of force?" Defense counsel again requested a different or supplemental charge which was again refused. After extensive colloquy, the court provided the jury with the definition of robbery in the first degree (Penal Law § 160.15; *see also,* Penal Law § 160.00), larceny (Penal Law § 155.05) and reread Penal Law § 15.25 concerning intoxication as a defense. The jury convicted defendant of two counts of second degree murder as well as first degree robbery. Defendant was thereafter sen-

tenced to concurrent prison terms of 25 years to life for each of the murder convictions and $8^1/_3$ to 25 years for the first degree robbery conviction. The latter merged with his sentences for murder. This appeal ensued.

Defendant contends that County Court committed reversible error when it denied him his right to be present during the *Sandoval* hearing. Acknowledging the absence of a timely objection, defendant argues that reversal is warranted in the interest of justice since the outcome of such hearing indicates that his presence would not have been superfluous. The People contend that defendant was physically present and that he failed to present sufficient evidence of his exclusion. In light of the rulings of the Court of Appeals in *People v Favor* (82 NY2d 254) and *People v Dokes* (79 NY2d 656), it is clear that if defendant was not present at the *Sandoval* hearing, we would be constrained to reverse his conviction despite the fact that at the time of trial, the Court of Appeals had not yet required defendant's presence. The record reflects that defendant was present at the *Wade* hearing where he was identified as a witness. Throughout the transcript of the *Wade* hearing, which immediately preceded the *Sandoval* hearing, the clerk of the court noted, subsequent to recesses, that "all persons previously noted are presently before the court". Accordingly, reading the transcript in its totality, it becomes clear that defendant's presence continued. Since a presumption of regularity attaches to official court proceedings and since defendant has failed to rebut such presumption, we reject his contention that he was deprived of his right to be present at a material stage of the trial (*see, People v Robinson,* 191 AD2d 523, *lv denied* 81 NY2d 1018; *People v Calizaire,* 190 AD2d 857; *cf., People v Michalek,* 82 NY2d 906; *People v Law,* 199 AD2d 282).

Defendant's contentions alleging error pursuant to *Brady v Maryland* (373 US 83) are similarly unavailing. The record does not contain any materials or correspondence which would indicate that Butler expected leniency in exchange for his testimony (*see, People v Baker,* 136 AD2d 826, 828; *cf., People v Steadman,* 82 NY2d 1). Here, pursuant to the defense's general request, we find it conceivable that the prosecution would not consider their communication regarding the suggested denial of Butler's parole relevant to his credibility as a witness (*cf., People v Cwikla,* 46 NY2d 434). We further find that defendant suffered no prejudice by late access to and preclusion from introducing the letter recommending the denial of his parole into evidence at trial (*see, United States v Agurs,* 427 US 97; *People v Vilardi,* 76 NY2d 67; *People v Janota,* 181 AD2d 932).

As to defendant's challenge to County Court's response to the various jury requests for clarifications and/or supplemental instructions when it reread a previous instruction deemed adequate by us, we find no error (*see, People v Almodovar*, 62 NY2d 126; *People v Malloy*, 55 NY2d 296, *cert denied* 459 US 847; *People v Starr*, 213 AD2d 758, *lv denied* 85 NY2d 980).

Addressing next defendant's contention that the jury should have been instructed on the affirmative defense of "extreme emotional disturbance" (Penal Law § 125.25 [1] [a]), we again find no error. Before such instruction is provided, the trial court must determine that sufficient credible evidence has been presented to allow the jury to find, by a preponderance of the evidence, that the elements of this defense have been established. Lay testimony concerning defendant's history was appropriately found to be insufficient to support the objective element "that there was a reasonable explanation or excuse for the emotional disturbance" (*People v White*, 79 NY2d 900, 903). We further agree that there was no appropriate offer of proof which could have satisfied the element "that the conduct was influenced by an extreme emotional disturbance at the time the alleged crime was committed" (*supra*, at 903; *see, People v Moye*, 66 NY2d 887), notwithstanding testimony establishing defendant's alcoholism and his conduct following the crime. Had County Court issued such a charge, it would have been error since it called for speculation by the jury concerning defendant's state of mind at the time of commission of the crime (*see, People v White*, 79 NY2d 900; *People v Walker*, 64 NY2d 741).

As to the defense of "mental disease or defect" (Penal Law § 40.15), again we find no error. While clearly defendant suffered from alcoholism which *is recognized as a disease*, there is no evidence that defendant suffered from a mental disease or defect within the meaning of the Penal Law (*see*, Penal Law § 40.15). Accordingly, we find County Court's charge on intoxication to have been appropriate and further reject, as without foundation, defendant's contention that his sentence was harsh and excessive.

Cardona, P. J., Mikoll, Mercure and Yesawich Jr., JJ., concur. Ordered that the judgment is affirmed.