[646 NYS2d 117]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HUMBERTO DELRIO, Appellant.

Second Department, June 17, 1996

124

**APPEARANCES OF COUNSEL**

*Robert C. Mitchell,* Riverhead *(Monroe A. Semble* of counsel), for appellant.

*James M. Catterson, Jr., District Attorney* of Suffolk County, Riverhead *(Karen Petterson, Susan Braitman, Patricia Murphy* and *Steven A. Hovani* of counsel), for respondent.

**OPINION OF THE COURT**

GOLDSTEIN, J.

In the early morning of April 21, 1991, the defendant entered Big Barry's restaurant, and shot and killed his wife, her co-worker, and an off-duty Suffolk County police officer. He stands convicted of three counts of murder in the second degree.

■ On appeal, the defendant contends, *inter alia,* that the trial court erred when it directed him to submit to a psychiatric examination by an expert selected by the People to

determine his competency to stand trial, when it refused to suppress certain evidence, and when it deprived the defendant of his right to be present during a portion of the voir dire. For the reasons that follow, we reject the defendant's contentions.

Pursuant to court order, on June 6, 1991, two psychiatrists conducted a joint examination of the defendant. Both psychiatrists concluded that the defendant suffered from schizophrenia, and was incompetent to stand trial, based, in part, upon information provided by the defendant, that he was committed to a psychiatric hospital in Cuba in the late 1970's.

On June 11, 1991, the People moved to controvert those findings, and by notice of motion dated June 24, 1991, moved to compel the defendant to submit to "a 730 examination by two psychiatrists chosen by the People". In his affidavit in support of the motion, the Assistant District Attorney noted that the defendant denied that he had psychiatric problems to the Immigration and Naturalization Service when he applied in 1985 for permanent residency in the United States, and did not reveal any psychiatric problems when questioned by the Probation Department during a preplea investigation. The defendant, in opposition, argued that the motion should be denied because CPL article 730 does not provide for an examination by psychiatrists chosen by the People.

The trial court granted the People's motion for an additional psychiatric examination of the defendant, to the extent of directing the defendant to submit to an examination by one psychiatrist of the People's choosing. The court noted that "the statute is silent", but since "the People have the burden of proof * * * by a preponderance of the evidence that the defendant has the mental capacity to stand trial" it would "be incongruous to put that burden on the People and deny them the opportunity to present experts of their own".

After a hearing, the trial court found, in a written decision, that the People, through the testimony of their expert, satisfied their burden of proof that the defendant was competent to stand trial. On appeal, the defendant contends that the trial court had no authority to direct a psychiatric examination of the defendant by a psychiatrist selected by the People.

CPL 730.30 (2) and (3) provide that when the examination reports submitted to the court pursuant to CPL 730.20 (5) are in agreement that the defendant is either competent or incompetent to stand trial, the court on its own motion may conduct a hearing on the defendant's competency and "must conduct [such a] hearing upon motion therefor by the defen-

dant or by the district attorney". CPL 730.30 (2) provides that if the examination reports submitted to the court show that each psychiatric examiner is of the opinion that the defendant is not an incapacitated person, but the court, after a hearing, is not so satisfied "it must issue a further order of examination directing that the defendant be examined by different psychiatric examiners designated by the director".[1] However, where the examination reports are in agreement that the defendant is incompetent, no provision is made for any additional examination. Further, where the examination reports submitted to the court are not in agreement as to whether or not the defendant is an incapacitated person, the court is required to hold a hearing, but *no* provision is made for any additional examinations *(see,* CPL 730.30 [4]).

The general rule of statutory construction is where a statute is "clear and unambiguous, 'the court should construe it so as to give effect to the plain meaning of the words used' " *(Matter of Auerbach v Board of Educ.,* 86 NY2d 198, 204, quoting *Patrolmen's Benevolent Assn. v City of New York,* 41 NY2d 205, 208). However, judicial interpretation based upon legislative history and policy considerations is permissible where "literal construction would lead to absurd or unreasonable consequences that are contrary to the purpose of the enactment" *(Matter of Auerbach v Board of Educ., supra,* at 204; *see, Matter of Ellington Constr. Corp. v Zoning Bd. of Appeals,* 77 NY2d 114, 121).

CPL article 730, originally enacted in 1970 when the Criminal Procedure Law was first enacted to replace the Code of Criminal Procedure (L 1970, ch 996), is not as comprehensive as it might first appear. It is silent on who bears the burden of proof at a competency hearing *(see, People v Veda,* 73 Misc 2d 857). Nevertheless, the courts have determined that the People are required to establish the defendant's competency by a preponderance of the evidence *(see, People v Santos,* 43 AD2d 73; *see, People v Christopher,* 65 NY2d 417, 424).[2] The burden of proof is not constitutionally mandated *(see, Medina v Califor-*

---

1. CPL 730.10 (4) defines "director" as "(a) the director of a state hospital operated by the office of mental health or the director of a developmental center operated by the office of mental retardation and developmental disabilities, or (b) the director of a hospital operated by any local government of the state that has been certified by the commissioner as having adequate facilities to examine a defendant to determine if he is an incapacitated person, or (c) the director of community mental health services".

2. In so doing, this State adopted a position contrary to other jurisdictions that place the burden of proof on the defendant to prove incompetence

*nia,* 505 US 437, *supra),* but is a creature of judicial construction.

In *People v Christopher* (101 AD2d 504, 519-520, *revd* 65 NY2d 417, *supra),* the Appellate Division, Fourth Department, noted that "CPL article 730 does not specifically state what procedures are to be followed at a capacity hearing", and interpreted CPL 730.30 (2) strictly, to permit a court to limit testimony at the hearing to the psychiatric examiners designated by the Director as defined in CPL 730.10 (4).

The Court of Appeals reversed, holding that construction "would be an absurd result. It would also be wholly inconsistent with the wording of the statute which provides in its first sentence that the court *'must* conduct a hearing upon motion therefor by defendant' (emphasis supplied), and with the memorandum of the Senator who sponsored the 1981 amendment which added to CPL 730.60 (2) the sentence quoted above. That memorandum stated flatly that: *'This bill ensures that the court,* the district attorney and *the defendant retain the right to contest the determination of the department.'* (1981 NY Legis Ann, at 423, 424 [emphasis supplied].) To say that defendant is ensured the right to a hearing and to contest a psychiatric determination but may not present psychiatric testimony is a contradiction in terms" *(People v Christopher,* 65 NY2d 417, 424, *supra).*

The Court also noted: "It is, furthermore, the People's burden to establish defendant's competence to proceed *(People v Santos,* 43 AD2d 73; *see, People v Silver,* 33 AD2d 475). If the proof submitted through the Mid-Hudson psychiatrist be deemed sufficient to shift the burden of going forward on that issue to defendant, still as Chief Judge Cardozo (as he then was) observed in *Matter of Reilly v Berry* (250 NY 456, 461), 'a defendant may

*(see, e.g., Cooper v Oklahoma,* 517 US —, 116 S Ct 1373; 18 USC § 4241 [d]; *Lipscomb v State,* 271 Ark 337, 609 SW2d 15; Cal Penal Code Annot § 1369 [f] [1982]; *Wallace v State,* 248 Ga 255, 258-259, 282 SE2d 325, 330, *cert denied* 455 US 927; *State v Aumann,* 265 NW2d 316, 319-320 [Iowa]; *State v Caudill,* 789 SW2d 213 [Mo]; *French v State,* 95 Nev 586, 600 P2d 218; *State v Chapman,* 104 NM 324, 327-328, 721 P2d 392, 395-396; *Barber v State,* 757 SW2d 359, 362-363 [Tex], *cert denied* 489 US 1091). Indeed, four States required the defendant to prove incompetency by clear and convincing evidence *(see,* Conn Gen Stat § 54-56d [b]; Okla Stat, tit 22, § 1175.4; 50 Pa Cons Stat § 7403 [a]; RI Gen Laws § 40.1-5.3-3). The United States Supreme Court has held that the "clear and convincing" standard violates a defendant's rights under the Due Process Clause *(see, Cooper v Oklahoma,* 517 US —, 116 S Ct 1373, *supra).* However, it is well settled that requiring a defendant to prove incompetence by a preponderance of the evidence does not violate the Due Process Clause *(see, Cooper v Oklahoma, supra; Medina v California,* 505 US 437).

be at an unfair disadvantage if he is unable * * * to parry by his own witnesses the thrusts of those against him.' Nothing in the statutory reference to a 'hearing,' or in its provision for a hearing on the court's own motion, suggests that defendant was to be disadvantaged at that juncture by being denied the assistance of a psychiatrist. As we have noted in *People v Richetti* (302 NY 290, 297), 'A "hearing" or "trial" of * * * an issue of fact is an empty form unless it takes place * * * with the right, on each side, to examine and cross-examine' " *(People v Christopher, supra,* at 424-425).

Thus, the fact that the statute was silent on the defendant's right to the assistance of a psychiatrist did not mean that he was not entitled to the assistance of a psychiatrist.

Following that reasoning, trial courts have granted the People the right to designate psychiatrists to examine the defendant in preparation for a competency hearing *(see, People v Gonzalez,* 132 Misc 2d 1004; *People v Broccolo,* 130 Misc 2d 606). Since both the People and the defendant may object to the findings of the psychiatrists designated by the Director, and the People bear the burden of proof as to competency, to deny the People the right to obtain necessary psychiatric evidence to satisfy their burden of proof is an absurd result *(see, People v Christopher,* 65 NY2d, *supra,* at 424; *People v Gonzalez, supra; People v Broccolo, supra).*

We further note that one of the primary concerns voiced in the legislative history of CPL article 730 was that mentally ill people accused of crimes were languishing in mental hospitals and that "the courts should not, as they now do, assume a purely passive role, merely waiting for a medical judgment", but should take a more active role in determining the defendant's competency.[3] To give the courts such a role, and mandate hearings, yet strictly limit the evidence which may be submitted at such hearings, would be a contradiction in terms.

In other contexts, the Court of Appeals has held that courts have the inherent power to direct the defendant to submit to a psychiatric examination requested by the People, in the "absence of legislative authority", to "preserve the integrity of the fact-finding process" *(People v Segal,* 54 NY2d 58, 65; *see, People v Berk,* 88 NY2d 257). In *People v Segal (supra),* the

---

**3.** *See,* Second Report and Additional Recommendations of Special Comm of Assn of Bar of City of NY on Study of Commitment Procedures and Law Relating to Incompetents, "Mental Illness, Due Process and the Criminal Defendant", at 105 (1968), cited with approval in Mem of Commn on Revision of Penal Law and Crim Code, 1970 NY Legis Ann, at 45.

Court noted that when the CPL went into effect in 1971, it made no provision for a court-ordered psychiatric examination at the request of the People. Although no statutory provision for such an examination was made until 1980, courts continued to order such examinations in the absence of statutory support *(see, People v Segal, supra,* at 65-66, n 1).

Contrary to the defendant's contention, compelling the defendant to submit to a psychiatric examination by a psychiatrist designated by the People does not violate a defendant's constitutional rights. CPL 730.20 (6) specifically provides that any statement made by a defendant in a competency examination "for the purpose of the examination or treatment shall be inadmissible in evidence" except on the issue of mental condition. In any case, the defendant makes no claim that statements made by the defendant during the examination by the People's expert were improperly used against him. Accordingly, his constitutional rights were not violated *(see, People v Gonzalez,* 132 Misc 2d 1004, 1006, *supra).*

The defendant could have moved for the retention of his own expert, at government expense, pursuant to County Law § 722-c, but did not do so *(see, People v Brown,* 136 AD2d 1, 12, *cert denied* 488 US 897). Therefore, the defendant cannot claim that he was at a financial disadvantage.

The defendant does not contest the fact that, with the testimony of the People's psychiatrist, his mental competency was established by a preponderance of the evidence. Accordingly, the competency finding must be sustained.

When the police responded to the scene of the defendant's crimes, his wife's co-worker, who was one of the victims, was still alive, and gave a dying declaration, *inter alia,* stating that the perpetrator lived with the female victim (the defendant's wife). Based upon that information, the defendant was arrested. Thereafter, he made admissions to the police and signed a written confession.

After a hearing, the trial court found (1) the dying declaration would be admissible at trial, and (2) the defendant's statements were voluntarily made. At the hearing, the defendant argued that if the court found the dying declaration inadmissible, there would be a probable cause problem. His argument that the dying declaration, even if believed, did not establish probable cause to arrest, is raised for the first time on appeal and therefore is unpreserved for appellate review *(see, People v Rosa,* 204 AD2d 744; *People v Hernandez,* 198 AD2d 299).

In any event, this argument is without merit. The defendant points to evidence that he left his wife about one month prior to the murders, and, contrary to the dying declaration, was not living with his wife at the time of the murders. However, such information may have provided the police with evidence of a possible motive, rather than turning suspicions away from the defendant.

■ The defendant further contends that his admissions were involuntary because he sustained an unexplained bruise to his forehead after his arrest, and his arraignment was unnecessarily delayed. However, there was evidence that the defendant struggled with the police shortly after his arrest, which could have explained his bruise. Further, there was no evidence that the defendant's arraignment was delayed for the purpose of depriving him of his right to counsel *(see, People v Ortlieb,* 84 NY2d 989; *People v Wilson,* 56 NY2d 692). Accordingly, suppression of his statements was properly denied.

Based upon the defendant's statements, a detective secured a search warrant to search the rented room where the defendant was staying at the time of the crimes. The room was searched, and the murder weapon and the defendant's bloodied clothes were recovered.

During the course of the trial, the owner of the house testified that, subsequent to the defendant's arrest, he went to the police station and gave a statement. Then two officers went to the owner's house, looked in the defendant's room, and spent the night in the house until a unit arrived the next day with a search warrant.

Upon the defendant's request for a hearing, the detective who obtained the search warrant testified that he applied for the search warrant on April 23, 1991, based upon the defendant's statements and his own observations of the scene of the crime two days earlier. Prior to obtaining the search warrant, he had never been on the premises searched, nor spoken to either of the two officers who had.

■ It is clear from the search warrant application that that warrant was secured based solely upon the defendant's statements and not any prior illegal search of his rented room. However, as the Court of Appeals noted in *People v Burr* (70 NY2d 354, 362, *cert denied* 485 US 989): "The presence of an independent source for a warrant and subsequent search therefore does not automatically immunize an initial warrantless search and insure the admissibility of evidence eventually seized pursuant to the warrant".

When the police use an illegal search as a confirmatory search, that is, to assure that evidence is present at the scene, which would justify the effort of securing and executing a search warrant, the police have secured a benefit which justifies suppressing the evidence subsequently seized pursuant to the search warrant *(see, People v Burr, supra)*. To determine whether an illegal search taints a subsequent legal search pursuant to a search warrant, one must determine whether the decision to seek the search warrant was "prompted" by what was seen during the illegal search *(Murray v United States, 487 US 533, 542; United States v Restrepo, 966 F2d 964, 972, cert denied sub nom. Pulido v United States, 506 US 1049; State v Lozar, 458 NW2d 434 [Minn])*. In determining that issue, a key consideration is the "relative probative import" of information secured during the illegal search "compared to all other information known to the officers" *(United States v Restrepo, supra, at 972)*. A search warrant is considered independent of the illegal entry if it would have been secured even if there had been no illegal search *(see, Murray v United States, supra, at 542, n 3; State v Lozar, supra, at 439)*.

In the instant case, the defendant admitted that he placed the murder weapon under the bed of the rented room. From the owner, the police confirmed that the defendant was, in fact, staying in the room during the period of his murderous rampage. Based upon the information legally available to the police, it is inconceivable that they would not have sought a search warrant. It cannot be said that any additional information illegally obtained prompted their decision to secure a search warrant. Accordingly, the evidence obtained pursuant to the search warrant was not tainted by any prior illegality.

The defendant further contends that he was not present during the questioning of two prospective jurors, in violation of his rights pursuant to *People v Antommarchi* (80 NY2d 247).[4]

■ The colloquy occurred in open court, after luncheon recess on February 10, 1993. The minutes do not reflect who was present in the courtroom after luncheon recess. The defendant notes that the minutes state that one of the prospective jurors entered the courtroom "with the court and the lawyers privately". However, the colloquy reflects that the other prospective juror was also present, although his entry into and

---

4. One of those jurors was peremptorily challenged by the People. Therefore, the defendant's presence or absence during the questioning of that juror could not have had any effect on the composition of the jury *(see, People v Feliciano,* 88 NY2d 18).

presence in the courtroom were never specifically noted. At the conclusion of this colloquy, the minutes note that "the whole jury panel enter[ed] the courtroom": the defendant's entry into and presence in the courtroom is not noted, although the defendant does not contest that he was, in fact, present during the rest of the voir dire.

Contrary to the defendant's contention, it is not "apparent from the record" that the defendant was not present during the questioning of the two prospective jurors. Although the record does not specifically state that the defendant was present, the inquiry occurred in open court, and there is no indication the defendant was not present. Accordingly, the defendant's contention must be rejected (see, People v Gargano, 222 AD2d 694; People v McGee, 220 AD2d 799; People v Robinson, 191 AD2d 523; see also, People v Morgan, 214 AD2d 809).

We have considered the defendant's remaining contentions and find them to be without merit. Accordingly, the judgment appealed from is affirmed.

THOMPSON, J. P., ALTMAN and McGINITY, JJ., concur.

Ordered that the judgment is affirmed.