■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JACQUELINE MENDEZ, Appellant. [746 NYS2d 171]

The law is well settled that the determination of whether a defendant is fit to stand trial is accorded great deference (*see People v Martin,* 291 AD2d 459, *lv denied* 98 NY2d 653; *People v Cox,* 196 AD2d 596; *People v Childress,* 177 AD2d 498, *affd* 81 NY2d 263; *People v Orama,* 150 AD2d 505; *People v Bolling,*

114 AD2d 416). On this record, contrary to the conclusion of the dissenting Justice, we find that the hearing court (Leavitt, J.), correctly determined that the defendant was competent to stand trial. The testimony of three experts finding the defendant competent was uncontroverted and satisfied the People's burden of demonstrating her fitness by a preponderance of the evidence (*see People v Cox, supra*; *People v Childress, supra*; *People v Orama, supra*; *People v Santos,* 43 AD2d 73, 75). Moreover, we find that the hearing court's determination was not against the weight of the evidence (*see People v Childress, supra*). Significantly, after the hearing court found the defendant fit to stand trial, the defense counsel never indicated that his client could not understand the nature of the proceedings or could not assist in her defense (*see People v Tortorici,* 92 NY2d 757, 767, *cert denied* 528 US 834).

Viewing the evidence adduced at trial in the light most favorable to the prosecution (*see People v Contes,* 60 NY2d 620), we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt.

The defendant's remaining contentions are without merit. Feuerstein, J.P., Krausman and Adams, JJ., concur.

Goldstein, J., dissents and votes to reverse the judgment appealed from, and to order a new trial, to be preceded by a competency hearing, with the following memorandum: According to the evidence adduced at the competency hearing, the defendant had a functional understanding of the charges against her and the roles of prosecutor, defense attorney, judge and jury. However, the test for competency is whether the defendant has a present ability to consult with his or her lawyer with a reasonable degree of rational understanding. The defendant must have a rational as well as a functional understanding of the proceedings (*see Dusky v United States,* 362 US 402). In the instant case, it is apparent from the record that the defendant lacked a rational understanding of the proceedings and was not capable of assisting in her own defense (*see* CPL 710.30 [1]; *Dusky v United States, supra*). Accordingly, the judgment appealed from should be reversed, on the ground that the defendant was not competent to stand trial.

During the course of the competency hearing, it was revealed that the defendant had a 16-year psychiatric history requiring hospitalization on at least 10 occasions. Dr. Abraham Halpern, who had previously found the defendant incompetent to stand trial, acknowledged her long-standing psychiatric history and the fact that the defendant "carried a diagnosis known as dissociative disorder and depression, depressive disorder." Dr.

Halpern testified that a person suffering from "dissociative disorder" is characterized by lapses in judgment and awareness. The person "appears in the vernacular not to be with it." The person may also have multiple personalities. Nevertheless, Dr. Halpern found that the defendant demonstrated a "minimal degree of understanding" of the roles of the parties. She knew who she was, and was aware of the role of the judge and the role of the prosecutor. In the opinion of Dr. Halpern, she did not "require any more complicated understanding than that."

Dr. Alan Tuckman, who examined the defendant on several occasions during videotaped sessions, testified that the defendant had "cognitive ability * * * the intellectual skills to know what she's charged with and who her attorney is and that her attorney is there to help her, that she is involved in a trial * * * and the objective is to be found not guilty."

The videotape of Dr. Tuckman's most recent interview with the defendant, which was introduced in evidence at the competency hearing, revealed that the defendant was unable to recall her approximate age, suffered lapses in memory of past events and suffered lapses in memory of the events unfolding before her. This was consistent with the diagnosis of dissociative identity disorder and an immature hysterical personality. The defendant's dissociative identity disorder was characterized by multiple personalities resulting from childhood trauma. The defendant exhibited three alternate personalities in addition to the personality of "Jackie," including a seven-year-old child, a teenaged girl named Carla, and an adult woman her own age named Maria Lopez.

Dr. Tuckman noted that a person suffering from multiple personalities will "completely disconnect and [not] remember being disconnected." The personalities are walled off from each other, so the defendant would not "remember what she might say or do or hear while she is one of the other personalities." Dr. Tuckman acknowledged that if the defendant changed from one personality to another during the trial, she "might miss a whole chunk" of the trial. Nevertheless, in Dr. Tuckman's opinion this problem could be overcome "through regular refreshing" of her recollection "of what witnesses said and then asking her if she remembered."

A third psychiatrist, Dr. Norman Weiss, examined the defendant for approximately 20 to 30 minutes. During that period he found that the defendant was logical and coherent. He noted in his report that she was able to respond appropriately to questions with respect to the roles of judge, jury, defense counsel and district attorney. However, Dr. Weiss did not

review the records of the defendant's psychiatric history. He testified that his knowledge of her psychiatric history was limited to what the defendant told him. He accepted the possibility that the defendant was suffering from a preexisting multiple personality disorder. However, Dr. Weiss claimed that he was "not necessarily" interested in a preexisting psychiatric disorder, since he was "just addressing [himself] to the issue of competency."

There was no evidence adduced at the competency hearing that the defendant was or is a malingerer. Indeed, the People did not dispute that the defendant suffered from multiple personalities. During Dr. Halpern's testimony, the defendant removed both of her shoes and identified herself as the teenaged girl Carla. She had to be reminded that she was in court. The prosecutor acknowledged that the defendant's behavior was "bizarre."

The People bore the burden of establishing that the defendant was not an incapacitated person by a preponderance of the evidence (see People v Christopher, 65 NY2d 417, 424-425; People v DelRio, 220 AD2d 122, 126; People v Santos, 43 AD2d 73, 75). CPL 730.10 (1) defines an incapacitated person as "a defendant who as a result of mental disease or defect lacks capacity to understand the proceedings against him [or her] or to assist in his own defense" (emphasis supplied). At the conclusion of the hearing, the court determined that the People sustained their "fair preponderance burden" that the defendant was fit to proceed.

The People note that the three psychiatrists who testified at the competency hearing all claimed that the defendant was competent to stand trial and the defendant presented no expert testimony in her own behalf stating that she was incompetent to stand trial. However, the determination of whether the defendant was competent to stand trial was a judicial determination, not a medical one (see People v Tortorici, 249 AD2d 588, affd 92 NY2d 757, cert denied 528 US 834). The court was not bound by the ultimate conclusion of the three psychiatrists that the defendant satisfied the legal definition of competence.

The People draw an analogy between the defendant's mental condition and a defendant suffering from amnesia with respect to the events at the time of the crime. In People v Francabandera (33 NY2d 429, 435), the Court of Appeals found that a defendant who suffered amnesia with respect to the events at the time of the crime was not, as a matter of law, incompetent to stand trial, since the term "incapacitated person" (CPL 730.10 [1]) related to the "defendant's mental imbalance at the time of

trial." The Court of Appeals (*id.* at 436), cited with approval *Wilson v United States* (391 F2d 460, 462), which held that the determinative factor was whether the defendant had the present ability to follow the proceedings.

In the instant case, it is undisputed that the defendant was suffering from a mental disease at the time of trial. Her mental disease impaired her current ability to follow the proceedings. Contrary to the People's contentions, the defendant's mental illness could not be characterized as "dormant," nor were her multiple personalities a "hypothetical problem." Her active mental illness and the real problems it caused are apparent from a cold record. During the course of the proceedings, she assumed at least one different personality. No one in the courtroom could be sure which of the defendant's personalities was listening to the proceedings or whether the person listening perceived herself as the person accused of the crime. When the defendant assumed an alternate personality she lost awareness of what was going on in her presence. When she shifted back to the defendant's personality, she would be unable to recall what occurred previously.

The suggestion that the defendant's condition was accommodated by granting her recesses when she demonstrated symptoms of her condition is factually and legally unsupportable. There is precedent for accommodating physical infirmities such as sleep apnea with frequent breaks, and reading back testimony the defendant may have missed by dozing off (*see People v Bisnett,* 144 AD2d 567). However, in that case, the court relied upon the fact that the defendant's infirmity was physical in nature; consequently CPL article 730 was not applicable. Moreover, there was no dispute that the defendant in *Bisnett* was capable of fully understanding the proceedings and assisting in his own defense when he was awake. Whether the defendant was awake or dozing would be apparent to the observer. By contrast, in the instant case, the full extent of the defendant's difficulties is undeterminable.

The majority, relying on *People v Tortorici* (92 NY2d 757, 767, *cert denied* 528 US 834), cites as a significant factor that once the defendant was found fit to proceed "the defense counsel never indicated that his client could not understand the nature of the proceedings or could not assist in her defense." In *Tortorici* (*supra* at 767), the defense counsel affirmatively and "consistently" represented that the defendant was competent and ready to proceed. That clearly is not what occurred at this trial.

In view of the foregoing, the judgment appealed from must

be reversed, and a new trial ordered, to be preceded by a competency hearing.